# C. W. LYONS, Appellant, v. SCHOOL DISTRICT OF JOPLIN et al.

### Division One, December 22, 1925.

1. **TAX LEVY: School District: Excessive: Building and Repairs.** Both by the Constitution and the statute (Sec. 11152, R. S. 1919) a levy by a school board of a city district in excess of one dollar on the hundred dollars' valuation for buildings is unauthorized; and the submission of a proposition to levy a tax of twenty cents on the hundred dollars "for building and repairs," joined indistinguishably with a proposed levy for school purposes, and from which it cannot be determined what portion of the tax is to be used for building and what portion for repairs, and whereby a total levy in excess of one dollar is voted, is not only objectionable for doubleness, but is excessive and unauthorized.

2. ————: ————: **Sinking Fund: Unnecessary: Undue Bonds: Money on Hand.** A levy of twenty cents on the hundred dollars' valuation for sinking-fund purposes, to be used solely for the redemption of outstanding bonds legally issued by a city school district, is authorized by the statute (Sec. 11132, R. S. 1919) authorizing boards of directors to make an estimate for a levy of a tax not to exceed two-fifths of one per cent of the assessed valuation to be used only for the redemption of outstanding bonds, and such an estimate cannot be revised by the courts, even though the petition alleges, and the demurrer thereto admits, that there is on hand a sufficient amount of money to pay all bonds due, payable or callable within the next four years.

3. ————: ————: ————: **Diversion to Fraudulent Purposes.** A charge, in the petition of a taxpayer in his suit to cancel a levy of twenty cents on the hundred dollars' valuation made to create a sinking fund to be used solely for the redemption of outstanding bonds of the district, that there was at the time of the levy a sufficient amount of money on hand to pay all bonds payable within the next four years, and that the excessive estimate was made for the fraudulent purpose of diverting the fund to be raised by the levy to other purposes, cannot be dealt with in such suit, but is a question to be dealt with when an attempt to divert is made.

4. ————: ————: **Interest: Excessive Estimate: Revision by Courts.** A demurrer to the petition in a suit to cancel a tax levy admits allegations therein that the school board stated in their estimate

that it was necessary to raise $77,206.50 for interest purposes, and that to raise that sum a levy of twenty-five cents on the hundred dollars was necessary; that the total annual interest upon bonded indebtedness was $17,700, and that "the levy was much in excess of the sum sufficient in amount to pay the annual interest." But the levy is not for those reasons void, since the statute committed to the school board the duty to make the estimate for the year, and requires the county clerk upon receipt of the estimate to "assess the amount so returned upon all taxable property," with a proviso therein that "the levy thus extended shall not exceed  . . .  a sufficient amount to pay interest on bonded indebtedness;" and a levy of twenty-five cents on the hundred dollars, though the demurrer thereto admits it is larger than is needed to pay the annual interest, does not violate any constitutional restriction or limitation, and the court is given no power to revise the estimate.

5. **TAX LEVY: School District: Pleading: Substantial Right: Laches.** In a suit brought by a single taxpayer to cancel and enjoin the collection of a school tax levied against his property, although the levy may appear to be irregular or in excess of constitutional limitations. his injury must appear to be substantial, and not disproportionate to the relief sought or the loss and inconvenience of others and of the public, and the application for the remedy must be reasonably made in view of all the conditions. And in disposing of a demurrer to his petition the court will consider the fact (a) that, although he alleges therein that he sues on behalf of himself and all others similarly situated and who may join in the prosecution of the suit and share the expenses thereof, no other person or taxpayer has joined him in the prosecution of the suit; (b) that, although he describes his property, he does not allege the amount of the tax that has been levied, and it cannot be ascertained from the petition whether his injury is substantial or infinitesimal; (c) that he brought his suit eight months after the excessive estimate was made, six months after the estimate was extended as a levy on the tax books, and three months after the schools for the year had been under full operation in reliance upon the taxes to be collected under the irregular estimate; (d) that two-thirds of the legal voters voted for the proposition irregularly submitting the excessive estimate; and (e) that the time had expired in which another estimate in any amount could be made for the support of the schools for the year.

6. ————: **Injunction: Laches: Discretion.** The question of laches in bringing a suit to cancel an illegal levy of taxes and the right to an injunction to enjoin their collection are both questions addressed to the sound discretion of the court, and both will be denied where the illegal act of which plaintiff complains has not

resulted in substantial injury to him and he has by his delay in bringing suit made it impossible to grant him relief without inflicting serious injury upon defendants.

7. ———: Laches: Demurrer to Petition Available. Cases dealing with private controversies and holding that a demurrer to the petition cannot be sustained on the ground of laches unless the petition discloses on its face that the defendant has been prejudiced or put to some disadvantage by the delay in bringing the suit and that plaintiff during the delay had knowledge of the facts and his rights, are not applicable to a suit by a single taxpayer to cancel a levy of school taxes levied against his property and to enjoin their collection in which are involved matters affecting all members of the corporate community and the powers of public officials to perform their statutory duty to maintain a public school.

Corpus Juris-Cyc. References: Injunctions, 32 C. J., Section 11, p. 29, n. 13. Schools and School Districts, 35 Cyc., p. 1002, n. 7; p. 1003, n. 11; p. 1037, n. 53 New, 62; p. 1038, n. 70; p. 1039, n. 73, 77; p. 1040, n. 89. Taxation, 37 Cyc., p. 1262, n. 6; p. 1271, n. 54.

Appeal from Vernon Circuit Court.—*Hon. Berry G. Thurman,* Judge.

AFFIRMED.

*Owen & Davis* and *S. H. Claycomb* for appellant.

(1) The county court clerk is not a proper party let alone a necessary party defendant. Land Co. v. Carthage, 129 Mo. App. 628. (2) Before a court can sustain a demurrer on the ground of laches, to a petition seeking to enforce a right, either legal or equitable, the petition must disclose upon its face that the defendant was injured or prejudiced by the delay, or that he was put to some disadvantage by such delay. 21 C. J. sec. 219, p. 223; Carson v. Lumber Co., 270 Mo. 244; Weir v. Lumber Co., 186 Mo. 396; Leslie v. Carter, 240 Mo. 572. And that the plaintiff had knowledge during the delay of the facts in the case and of his rights. 21 C. J. sec. 242, p. 244; Stanton v. Thompson, 234 Mo. 15; Kutters v. Carothers, 223 Mo. 640; Dexter v. McDonald, 196 Mo.

400. (3) The taxes sought to be enjoined cast a cloud upon plaintiff's title to the real estate described in the petition, and it was the duty of the court, by its decree and judgment, to remove said cloud and to enjoin the collection of said taxes. Land Co. v. Carthage, 129 Mo. App. 628; Verdin v. St. Louis, 131 Mo. 78; State ex rel. v. Philips, 97 Mo. 331; Skinker v. Heman, 64 Mo. App. 448; 5 Pomeroy's Equity Juris.; sec. 362; Cooley on Taxation, pp. 778, 779, 780. (4) Injunction is a proper remedy to enjoin the collection of taxes levied in excess of the rates provided in the Constitution, or when levied without authority of law. Overall v. Ruenzi, 67 Mo. 203; Arnold v. Hawkins, 95 Mo. 569; Ewing v. Board of Education, 72 Mo. 441; Valle v. Ziegler, 84 Mo. 214; Railroad Co. v. Apperson, 97 Mo. 300; Black v. McGonigle, 103 Mo. 202; State ex rel. v. Columbia, 111 Mo. 365. (5) The tax of two mills on the dollar for building and repair purposes is illegal and void. (a) The board of education did not authorize the submission to a vote of the qualified voters, and upon which they voted, the question "whether there shall be levied a tax of two mills on the dollar for building and repairs," but on the contrary, by resolution, submitted the proposition of "a levy of two mills on the dollar for the purpose of keeping the school buildings in repair." The power to vote an increase in the rates of taxation provided in Section 11, Article 10, Constitution, for building purposes, is a power not delegated to the voters by Sec. 11210, R. S. 1919, and can only be exercised when submitted by the board under Sec. 11152, R. S. 1919. (b) The Constitution does not authorize an increase in the rates of taxation over and above the rates provided in Section 11 of Article 10 of the Constitution for purposes of repairs of the school buildings. State ex rel. v. Wilder, 200 Mo. 104. (c) The proposition voted upon was double, in that it consists of the proposition of voting a building tax and also a repair tax. State ex rel. v. Allen, 186 Mo. 673; State ex rel. v. Wilder, 217 Mo. 216; State ex rel. v. Gordon, 268 Mo. 321. (6) The estimate of twenty-five

cents on the one hundred dollars assessed valuation, amounting to $77,206.50, for interest purposes, certified to the county court clerk and by him extended upon the tax books, is illegal; (a)  Said estimate was made and certified by the president and secretary, respectively, and not by the board of education, as required by law. Sec. 11133, R. S. 1919.  (b)  The amount so estimated, certified and extended on the tax books is so grossly excessive as to indicate fraud.  Injunction will lie to restrain the collection of a tax which is so grossly excessive as to indicate fraud.  26 R. C. L. sec. 415, p. 461; Board of Commrs. v. Bullard, 16 L. R. A. (N. S.) 807, 94 Pac. (Kans.) 129.  (c)  The petition alleges, and the demurrer admits the truth thereof, that said estimate was made by the clerk and president respectively of defendant school district, and that it was made for the fraudulent purpose of transferring, when collected, all of said tax over and above the sum of $8086, the amount necessary with the amount on hand to pay in full the annual interest on the bonded indebtedness, to the teachers' and incidental funds.  (7)  The twenty-cent tax on the one hundred dollars assessed valuation for sinking fund purposes is illegal:  (a)  It is so grossly excessive as to indicate fraud, the total bonded indebtedness being $393,000, of which amount only $1000 will be due on or before April 1, 1924, and $42,000 on May 1, 1926, but callable at any time, with $60,185 on hand in the sinking fund to meet the payment of said amounts as they fall due.  (b)  The estimate for said levy was made by the president and secretary, respectively, of defendant school district, and not by the board of education of said district, as required by law.  Sec. 11132, R. S. 1919. (c)  The petition alleges, and the demurrer admits the truth thereof, that said estimate was made for the fraudulent purpose of transferring said taxes, when collected from the sinking fund to the teachers and incidental funds.

*George J. Grayston* and *Haywood Scott* for respondents.

(1) The clerk of the county court, not the school board, made the levy complained of by plaintiff. This suit is brought to enjoin the collector from collecting a tax levied by the clerk of the county court, and which the collector is bound to collect by virtue of the obligations of his office. The plaintiff complains that the tax is illegal but the party which ordered it is not made a party defendant. The clerk of the county court should have been made a party defendant. State ex rel. v. Sanderson, 54 Mo. 206; Ry. Co. v. Anthony, 73 Mo. 434; Ry. Co. v. Davis, 23 So. (La.) 946; Gaither v. Greene, 4 So. (La.) 210; Sec. 11183, R. S. 1919. (2) Where plaintiff's petition shows on its face that plaintiff was a resident and citizen of the school district and that the resolution submitting the levies complained of by plaintiff to the qualified voters of the school district was adopted by the school board on March 10th; that due notice thereof was given and that the election at which the levies were voted was had on April 5th, and that the estimate of the requirements of the school district for the year beginning July 1st, together with the results of the school election of April 5th, were certified to the clerk of the county court in due time (on or before May 15th) and that the clerk made the levies complained of by extending the same upon the tax books of the county and that the same were afterwards placed in the hands of the collector for collection, and that plaintiff paid all but forty-five cents on the $100 valuation thereof, twenty cents of said forty-five cents being for building and repairs and twenty-five cents being for interest on bonded indebtedness, yet plaintiff delayed his injunction suit to restrain the collection of said forty-five cents until the month of December, nine months after the action complained of had been taken by the school board, eight months after the levies complained of had voted at the school election, five months after the

beginning of the school year for which the money was required, three months after the schools were in session and three months after the taxes became due and payable, it being then too late for the school board to order and hold another school election to vote a levy for building purposes, too late for the school board to revise its levy and its certified estimate to the county clerk providing for a tax to pay interest on bonded indebtedness, thus leaving it without any provision for meeting the accruing interest on its bonds, and too late for the clerk who made the alleged illegal levy to correct it upon another estimate being filed by the school board, plaintiff is guilty of laches, and it is necessary for plaintiff to plead facts excusing his delay. Kennedy v. Montgomery Co., 38 S. W. (Tenn.) 1075; Pomeroy's Equitable Remedies (1 Ed.) sec. 21; High on Injunction (4 Ed.) sec. 418, p. 696; Stamper v. Roberts, 90 Mo. 688; Robinson v. Wiese, 210 S. W. 894; High on Injunction (4 Ed.) sec. 487, p. 448; Bluejacket v. Ewert, 265 Fed. 823; Felix v. Patrick, 145 U. S. 317, 36 L. Ed. 719; Schrimpscher v. Stockton, 183 U. S. 290, 46 L. Ed. 203; Tanner v. Lindell Ry. Co., 180 Mo. 18. (3) A petition by a taxpayer praying for an injunction against the collection of taxes because illegally levied must state the amount of taxes he seeks to have enjoined. To entitle him to relief he must show substantial and serious damage and not a mere technical and inconsequential injury. Relief by injunction is not controlled by arbitrary and technical rules, but the application for its exercise is addressed to the conscience and sound discretion of the court and must be seasonably made. Robins v. Latham, 134 Mo. 472. (4) Issuance of injunction is always in the discretion of the court. Tanner v. Lindell Ry. Co., 180 Mo. 18.

LINDSAY, C.—The plaintiff, as owner of property assessed for taxes in the School District of Joplin, sued to have certain levies of taxes for school purposes cancelled, as being a cloud upon his title, and asked that

the collection of such taxes be enjoined. A demurrer was filed; the venue changed to Vernon County, and defendant's demurrer to the petition was sustained; plaintiff declined to plead further, and judgment for defendants followed. The appeal of plaintiff was allowed to the Kansas City Court of Appeals, and that court has transferred the cause to this court, upon the ground that the cause involves a construction of the revenue laws of the State. With the school district, there were joined as defendants, McMillan, as Collector of the Revenue of Jasper County, and Starr, as treasurer of the school district. The direct attack of the plaintiff is against two levies. The first is a levy of twenty-five cents on the $100 valuation for interest on the bonded indebtness of the district; the second, a levy of twenty cents for building and repairs. The total of the levies of the district was $1.65 upon the $100 valuation.

The plaintiff alleges that he had paid State and county taxes, and the school tax levy of one hundred cents on the $100 valuation for teachers and incidental purposes, (eighty cents for teachers and twenty cents for incidental fund), and also a tax of twenty cents on the $100 valuation for sinking fund purposes.

The petition, while alleging that the total is in excess of the limit prescribed by the Constitution, assigns certain specific grounds of invalidity in respect of the levy for building and repair purposes, and of the levy for interest on bonded indebtedness. The allegations as to the levy for building and repairs are summarized first: It is charged that the board of education at its meeting on March 10, 1921, adopted a resolution to submit to the voters at the annual election to be held on April 5, 1921, the question of "a levy of two mills on the dollar for the purpose of *keeping the school buildings in repair.*" It is next alleged that the notices given recited there was submitted, among other things, at said annual election, the proposition: "Whether there shall be levied a district tax of two mills on the dollar for *building and repairs.*" This proposition, the

petition alleges, was adopted by a two-thirds vote. Based upon the difference in the language of the resolution adopted by the board, and the language of the proposition stated in the notices, the petition charges that the board of education did not submit, nor authorize submission of, the proposition stated in the notices; that the vote thereon was unauthorized and that the levy of two mills on the dollar, voted thereunder, was invalid. The essence of the charge is that one proposition was authorized to be submitted, but that a different one was actually submitted and voted upon. The petition alleges that the proper officers gave the notice. The petition then charges that said levy of two mills on the one dollar for building and repair purposes is void for the reason that the Constitution does not authorize a rate of taxation over and above one dollar on the $100 of assessed valuation, for the purposes of repairing school buildings; and, that said levy is illegal for the reason that no particular building was in contemplation of said board, and no particular building was submitted to a vote, and that the voters did not vote for the erection of any particular building; and further, that said levy is illegal for the reason that, as thus submitted, a double proposition was voted upon by the voters.

The petition next states that the president and secretary of the board of education, in due time, certified to the clerk of the county court of Jasper County, the estimates of what were required for the various purposes for the school year commencing July 1, 1921, and ending June 30, 1922. The petition charges that the board did not make the estimate, but that its making was the personal act of the president and secretary. The items of these estimates for the various purposes are set out in the petition. The petition charges the estimate made for building purposes as stating the necessity of a levy of twenty cents on the $100 assessed valuation. It alleges an estimate of what was necessary to be raised for sinking fund purposes, requiring a

levy of twenty cents on the $100. It charges an estimate that "it was necessary to raise for purposes of payment of annual interest on bonds of the district, the sum of $77,206.50, and that the amount on hand in that fund was $9,814; that it was necessary to raise by taxation the sum of $67,212.50, and that the rate necessary to raise said amount was twenty-five cents on the $100 of the assessed valuation."

The petition sets out the amount of the bonded indebtedness of the district, and charges that the amount of $77,206.50, stated in the estimate as necessary for annual interest, is false and untrue; that the amount actually necessary to be raised on that account, in addition to the interest fund on hand, was $8,086; that said levy was excessive, and illegal to the extent of all sums levied in excess of the amount of annual interest to be paid. In a similar way the petition asserts that the levy for sinking fund was not required to meet bonds due, or which are redeemable before April 1, 1924. The petition charges that the defendant school district, during the school year from July 1, 1920, to June 30, 1921, transferred from the interest fund to the teachers' fund the sum of $15,000, and from the interest fund to the incidental fund the sum of $42,000, and charges that the defendant school district is seeking to collect said tax for interest, for the fraudulent purpose of transferring the same to the teachers' fund, and the incidental fund, and will do so, if permitted to collect said tax.

The petition also charges that the levy for sinking fund is unnecessary, and is made for the unlawful purpose of transferring it to the teachers' fund and incidental fund; and that such transfer will be made if the district is permitted to collect the same.

Asking cancellation only of the taxes assessed for interest purposes, and for building and repair purposes, plaintiff, in his petition, offers to pay any of said taxes which the court may find to be legal, if any. The grounds of the demurrer were: (1) that the petition does not state facts sufficient to constitute a cause of

action, or (2) to authorize the relief asked; (3) that it shows on its face that plaintiff has unnecessarily and inexcusably delayed the institution of his suit, and is guilty of laches; (4) that there is a defect of parties defendant, in that, the Clerk of the County Court of Jasper County is not made a party defendant, and (5) a defect, in that the Treasurer of Jasper County, is not made a party defendant.

The levies assailed required consideration, severally, because of their difference in character. The validity of the levy of twenty cents on the $100 valuation for purposes of building and repairs is attacked upon various grounds. It is urged that the board of education, by its resolution, authorized the submission of the question "whether there shall be levied a tax of two mills on the dollar for the purpose of keeping the school building in repair," whereas the question submitted by the notice and voted upon in the election was "whether there shall be levied a tax of two mills on the dollar for building and repairs." The question of a levy for building and repairs, or, for either, was one submissible by the board under Section 11152, Revised Statutes 1919, provided, its submission did not involve a tax beyond the maximum limit and beyond the authorized purposes, under the Constitution (Sec. 11, art. 10).

Under Section 11152, boards of education may submit the question of a levy for buying or erecting school buildings, or repairing or furnishing such buildings. Such a tax, the section provides, is one "to be levied within the maximum rates prescribed by the Constitution and as therein limited for such purposes." The maximum rates allowed for school purposes by Section 11, Article 10, of the Constitution, for city districts, is one dollar on the $100 valuation. A further maximum rate in excess of that amount, not exceeding one dollar on the $100 valuation, is allowed for the purpose of erecting public buildings in such districts; but that pro-

*Building and Repairs.*

vision of the Constitution does not authorize the voting of a levy for repairs of such buildings when such levy is one attempted to be made in excess of the maximum rate of one dollar on each $100 of valuation. [Jacobs v. Cauthorn, 293 Mo. 154; Harrington v. Hopkins, 231 S. W. 263.]

We do not regard the difference between the language of the resolution and the language of the notice, as of such importance as to require discussion here, or a special ruling, since the levy as submitted in the notice was unauthorized under the Constitution, for the reason, that it submitted the question of a levy for the purpose of repairs, and it was a levy in excess of the maximum permitted by the Constitution. The Constitution by its plain words, restricts the purpose of the levy beyond the maximum of one dollar on the $100 valuation, to a levy for the purpose of erecting buildings. The submission here, joined indistinguishably, the purposes of building and of repairs. Counsel for appellant urge that the question submitted was double. It is. Under the circumstances stated in the petition we should not regard the duplicity of the submission as of serious importance, provided the levy so submitted were one which, with the other levy for school purposes, made a total not in excess of one dollar on the $100 valuation. If it were within the maximum prescribed by the Constitution, it could be regarded as an irregularity, and not necessarily, nor in every case, fatal. But, in the levy here under consideration, one element of the doubleness of the submission is unauthorized by the Constitution, and the two elements are merged. It cannot be said what portion of the levy was for building, nor what portion was for repairing. Such a levy cannot, for that reason, be held to be authorized without disregarding the provisions of the Constitution, and without disregarding, as well, the provisions of Section 11152.

The plaintiff alleges in his petition that he has paid the twenty cents on the $100 valuation for sinking-fund purpose and has not paid the twenty-five cents' levy for

interest on bonded indebtness.  He assails these levies on the ground that they are grossly excessive, far beyond what was required in view of the amount of the bonded indebtedness, the amount of interest to be paid, and the amount required to be paid upon the principal of the bonded debt, due, or callable for payment.  As to the levy for a sinking fund, the allegation is that the total bonded indebtedness was $393,000, of which amount only $1,000 will be due on or before April 1, 1924, and $42,000 on May 1, 1926, but callable at any time; that there was on hand in the sinking fund, at the time the estimates were made, $60,185; that the estimate made was that $113,955  was required for sinking funds, and that in addition to the $60,185 on hand in that fund, it was necessary to raise by taxation $63,770, by a levy of twenty cents on the $100.  As to the levy for interest, the allegation is that the estimate stated it was necessary to raise for interest purposes $77,206.50; that the amount on hand was $9,814 and the amount necessary to be raised by taxation was $67,212.50, making necessary a rate of twenty-five cents for interest purposes.  There was the further allegation that the total annual interest upon bonded indebtness is $17,700, and, that with the amount on hand in that fund, it was only necessary to raise by taxation the sum of $8,086.

Under Section 11132, Revised Statutes 1919, boards of directors are authorized to make an estimate for a levy of a tax not to exceed two-fifths of one per cent of the assessed valuation to constitute a sinking fund, to be used only for the redemption of outstanding bonds.

Under Section 11133 such boards are authorized to make an estimate for the levy of a tax "sufficient in amount to pay the annual interest on all bonds of their respective districts."  The levy for sinking fund in this case was within the limit allowed, and there can be no revision here of such an estimate.

The charge that there was a fraudulent purpose to divert the fund to other purposes could not be dealt with by the trial court, but was a question to be dealt

with when an attempt to divert might be made. These expressions are in accord with what was held in Pope v. Lockhart, 299 Mo. 141, 146.

As to the levy for interest, under the allegations in the petition, admitted by the demurrer, it is much in excess of the sum "sufficient in amount to pay the annual interest," in the period of the year for which the levy was made.

There is contained in Section 11183 a like limitation upon the amount of the levy for interest. That section makes it the duty of the county clerk upon receipt of the estimates of school boards to "assess the amounts so returned on all taxable property," followed by the proviso, however, "that the levy thus extended shall not exceed in any one year as follows: For building purposes one per centum in town school districts; . . . for school purposes one per centum in town school districts . . . and a sufficient amount to pay interest on bonded indebtedness." In this case it is alleged that these estimates were filed in due time, and that the county clerk extended the taxes accordingly. The levies made for interest and sinking fund are not in any way violative of the constitutional provision. The levy for sinking fund is within the limit prescribed in the statute. The levy for interest, as we have already remarked, appears to be more than sufficient to pay the annual interest, but that fact, with the allegation that there is an intent to divert some of the fund, when received, did not avoid the levy, nor warrant injunction against the collection of those taxes. Upon the situation thus presented, the holding of this Division of this court in Pope v. Lockhart, 299 Mo. 141, is apposite. It was there said at page 146: "It is clear that the Legislature committed to the school board the duty to make the estimates for the year, and that the board kept its estimate well within the lawful limits of the levy constitutionally authorized by the voters. The courts are not expressly given authority to revise the estimates of the board, and will not arrogate to themselves such power merely be-

cause it may be thought the levy recommended will raise
a sum in excess of the needs of the fund for which the
levy is made, nor yet because there may be some evi-
dence tending to show an intent to divert the money,
after its collection, to another purpose since this can be
dealt with when such attempt at diversion is made  [C.
C. C. & St. L. Ry. Co. v. People, 208 Ill. l. c. 11, 12, and
cases cited; 1 High on Injunctions (4 Ed.) sec. 544, pp.
517, 518, 519.]  The power given the board is 'highly
discretionary' and legislative in nature.''  Concurring
in the soundness of the views thus expressed, we con-
clude that under the allegations made, the trial court
was warranted in a ruling refusing the relief prayed
in respect of the levies just mentioned and in denying
cancellation of the levy made upon plaintiff's pro-
perty for the interest fund, and denying an injunction
against the collection and receipt of taxes for interest.
These levies for interest and sinking fund, were re-
sponsive to contractual obligations, long before entered
into by defendant district.

On the other hand, the levy for building and repairs
was one undertaken in contemplation of contracts
thereafter to be made—obligations to be entered into
upon the faith and credit of the district as having voted
such a levy.  This recalls us to a further con-
sideration of that levy in its prospective
effect; and the bearing thereon of certain
grounds of the demurrer not heretofore con-
sidered, but which comprise the points to
which the brief for respondent is almost wholly confined.

*Pleading:*
*Laches:*
*Injunction:*
*Discretion.*

The plaintiff, in his amended petition, alleges that
he sued ''on behalf of himself and all others similarly
situated and who may join in the prosecution of this
suit and share the expenses thereof.'' Upon the record,
it must be assumed that no one joined plaintiff in the
prosecution of the suit.  The abstract recites that the
original petition was filed ''on the——day of December,
1921,'' and that the amended petition was filed ''on the
——day of January, 1922.''  The petition alleges that

plaintiff was a resident and citizen of the city of Joplin, living within the defendant "school district, and the owner of certain real estate, situated in said district, to-wit: Lot 114 in W. G. Sergeant and Co.'s Addition to the City of Joplin, and was and is the owner of certain personal property located in said school district, and that said real estate and personal property was subject to the levy and assessment of all taxes authorized by law to be levied, and collected, for the use of said school district."

The petition does not state the amount of tax levied against plaintiff's property, under any of the various levies, nor does it state the assessed valuation of his property, real or personal, whereby the amount of the tax can be computed.

In Robins v. Latham, 134 Mo. 466, the plaintiff sought an injunction against what was alleged to be an illegal disbursement of money held by defendants as constituting a board of a levee district. It was alleged that the district was not legally organized and the funds held had been illegally collected. A demurrer to the petition was sustained, and in disposing of the case upon appeal and upon what was set forth in the petition, it was held that it was not necessary to pass upon the validity of the law, upon which the district was organized, nor the proceedings by which the taxes had been collected. It was said, at page 472: "The petition contains no allegation as to the amount of taxes paid by plaintiff, and it is not enough that a nominal injury be apprehended in order to entitle him to this peculiar and extraordinary remedy. It is not controlled by arbitrary and technical rules, but the application for its exercise is addressed to the concience and sound discretion of the court and must be seasonably made. In Bigelow v. Hartford Bridge Co., 14 Conn. 565, it was held that, to authorize an interference by injunction, there must not only be a violation of the plaintiff's rights, but such a violation as is, or will be, attended with substantial and serious damage, and not merely a technical or inconsequential

injury. [See, also, Bassett v. Company, 47 N. H. 426.]''
It was held that since the petition did not show any sub-
stantial injury to be apprehended by the plaintiff, he
was not entitled to injunctive relief from what, so far
as the petition disclosed, might be an inconsequential
injury.

In Fugate v. McManama, 50 Mo. App. 40, the plain-
tiff asked injunction against the directors of a school
district to prevent them issuing warrants for the main-
tenance of an additional school which the directors had
contracted for, owing to an increase in the population
of the district. After stating the facts developed upon
the hearing, the court, discussing that branch of the case,
said, at page 42: ''Upon this basis of fact, which we
do not deem it necessary to spread out more in detail,
we are of opinion that the circuit judge rightly dis-
missed the petition, for the reason that the plaintiffs
failed to show the extent of their interests, which (if at
all) were injuriously affected by the irregular action
of the directors. The answer does not deny the alle-
gation that they are 'taxpaying citizens,' but the ev-
idence is entirely silent upon the amount of taxes which
they pay, or have paid, or are liable to pay; and, for
aught that the record discloses, their interest in the
matter may be almost infinitesimal. If a considerable
number of other taxpaying citizens had joined them in
the prosecution of a suit for an injunction, a different
case would be presented; but, so far as appears, all the
other inhabitants of the school district that have child-
ren whom they desire to keep at school are availing
themselves of the advantage of sending them to one
school or the other, and are acquiescing in what the
directors have done. Because the interests of the plain-
tiffs may be merely infinitesimal, so that their quest
may be subject to the maxim *de minimis non curat lex*,
we must hold that they do not disclose on this record
any adequate reason for moving a chancellor to grant
the extraordinary relief which they seek.'' The suit
was further held to be destitute of equity upon the ground

of delay. The contract for teaching in the additional school was entered into on September 8th, and the petition in the suit was prepared and sworn to on October 24th following, and the summons issued on December 18th. The case reached a determination in February following, and about one week before the expiration of the time for which the additional school was established. Upon that phase of the case the St. Louis Court of Appeals said, at page 44: "Taking this unexplained delay in connection with the failure on the part of the plaintiffs to show the extent of their interest which would be injuriously affected by the irregular action of the directors, and considering also the failure of any other taxpaying citizens to join them in the suit, we have no difficulty in saying that there was no equity in their suit, and that it was correctly disposed of by the circuit judge. Of course, we do not wish to say anything which will convey an intimation that we sanction the irregular action taken by the directors. They acted irregularly and without authority of law. That is not contested at all by their counsel."

In the case at bar, the judgment by the Circuit Court of Vernon County was entered on the 20th day of February, 1922.

The delay in exerting a right, which, attended with the events occuring during the delay may constitute such laches as bars relief, has no fixed limits as to mere lapse of time. This is well stated in 10 Ruling Case Law at page 399: "Since laches is generally regarded as being, not delay alone, but rather delay working a disadvantage to another, it is evident that there is and can be no fixed or determinate rule for the application of the doctrine, no exact time, to an hour, a minute, or a year, within which a party's claim to relief, or assertion of a right, is barred by lapse of time, but each case must depend on its own peculiar circumstances. In other words, the question is addressed to the sound discretion of the court." In this case then, the question of the levy of the tax for building and repairs was submitted on

Lyons v. School District.

April 5, 1921, pursuant to a notice given to the voters of the school district. Two-thirds of the voters voted in favor of that levy. The filing of the estimate followed in due time, on or before May 15th, and extension of a tax upon the tax books followed, and the tax books were delivered to the defendant county collector.

The suit was brought not less than eight months after the voting of the levy, and, necessarily several months after the schools had been opened, because the allegations of the petitions show that a term of ten months was authorized. The time for a correction of any estimate had long gone by. The estimate filed under the provisions of Section 11142 may be withdrawn, and revised estimates may be substituted, if done before the first estimates were acted upon, and a valid levy may be made upon such revised estimates. [State ex rel. v. Phipps, 148 Mo. 31.]

In the period after the voting a levy of taxes, and upon the credit thereof, contracts are made in anticipation of the opening and the necessary maintenance of the schools. It is apparent that at the time the suit was filed a considerable part of the taxes must have been paid, and before the time of its determination the greater portion would be paid. It is true, as urged by counsel for plaintiff, that injunction is a proper remedy to enjoin the collection of taxes levied in excess of the rates allowed by the Constitution, or, without authority of law. But, there are other conditions precedent to the proper exercise of such a remedy. In such cases the injury to the complaining party must appear to be substantial, and not disproportionate to the relief sought or to the loss and inconvenience of others and of the public, and the application for the remedy must be seasonably made in view of all the conditions. Counsel cite authorities for the contention that before a court can sustain a demurrer on the ground of laches, the petition must disclose upon its face that the defendant was prejudiced, or put to some disadvantage by the delay, and also that it must appear the plaintiff had knowledge, during the delay, of

the facts and of his rights. The cases cited upon this point are cases dealing with private controversies, with facts arising out of the acts of private persons, and not in matters involving the exercise by a public corporation or public *quasi*-corporation, of the powers of taxation and expenditure of public moneys, according to the statutory and constitutional provisions, begun upon notice to the public, taking form at stated times prescribed by law, and involving matters of interest to all that part of the public within a given district. The acts set out in the petition are the acts of public officials affecting all members of the corporate community, of which plaintiff was also a member. Not only is the question of what constitutes laches in a given case, a question for the exercise of a sound discretion by the court, but the propriety of the issuance of an injunction in a given case is also a matter wherein a sound discretion is to be exercised. This rule is well stated in Tanner v. Lindell Railway Co., 180 Mo. 18. There, it is said: "But the issuance of an injunction even when promptly applied for is always in the sound judicial discretion of the court. 'The courts will require a very strong case for the granting of an injunction which will cause more injury than it will remedy, and it may be said, as a general rule, that an injunction will not be granted when it will be productive of greater injury than will result from a refusal of it. This rule is especially applicable when the party applying for an injunction has by his own laches made it impossible to grant the injunction without inflicting serious injury on the party so to be enjoined. In determining which way the balance of convenience lies, the resultant benefit and detriment to the parties litigant are not the only matters to be considered. The court will also consider the injuries which may be inflicted on strangers to the suit and to the public generally.' [16 Am. & Eng. Ency. Law (2 Ed.) 363.] That doctrine was announced by this court in Bailey v. Culver, 84 Mo. 540."

In consideration of all the foregoing we cannot say that the action of the trial court was not taken in the

exercise of a sound judicial discretion. The demurrer and briefs raise the question of whether the county clerk was a necessary party, but, in view of the conclusions otherwise reached, that question is one not necessary to be determined here.

The judgment is affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. *Ragland, P.J., Graves* and *Atwood, JJ.,* concur; *Woodson, J.,* absent.