STATE EX REL. L. D. MARLOWE, Collector of Revenue for New Madrid County, v. HIMMELBERGER-HARRISON LUMBER COMPANY ET AL.. Appellants.—58 S. W. (2d) 750.

Division One, March 16, 1933.

*Oliver & Oliver* and *Elmer A. Strom* for appellants.

*Gallivan & Finch* and *Bailey & Bailey* for respondent.

STURGIS, C.—This case comes to this court on certification of the Springfield Court of Appeals as involving a construction of the revenue laws of the State. The plaintiff is the Collector of the Revenue for New Madrid County and defendant is a manufacturer of lumber and its products, located at Morehouse, in that county. As such, defendant gave bond, as required by law, for the payment of the taxes lawfully assessed against it for the year 1928. This suit is on such bond. There is no dispute as to the property assessed

or its valuation. In fact, the defendant paid all taxes assessed against it for the year 1928 except a part of the school taxes now in dispute. The disputed taxes are for the year 1928 and in favor of School District No. 25, commonly known as the Morehouse School District, which defendant refused to pay as being illegally assessed. The total taxes assessed against defendant for schools for the year 1928 amounted to $1659.20, made up of the following rates per $100 valuation, to-wit:

For School Purposes ............................$1.00
For Interest ................................. .10
For Sinking Fund ............................... .10
For Building Purposes ........................... .50

$1.70

The defendant tendered and paid the amounts assessed for interest and sinking fund and forty cents per $100 valuation for school purposes, making a total paid of sixty cents per $100 valuation, aggregating $585.60 school taxes. The defendant refused to pay the amount assessed for building purposes, fifty cents on the $100 valuation, and refused to pay sixty cents of the 100 cents assessed for school purposes. The plaintiff now sues for this balance of $1073.60 plus interest and costs, made up of the fifty cents per $100 valuation for building purposes and sixty cents per $100 valuation for school purposes. On trial by the court plaintiff had judgment and defendant has appealed.

No question arises on the pleadings and there are practically no disputed facts. Defendant concedes that under the law this Morehouse School District could and did properly levy a tax of forty cents per $100 valuation on all classes of property, but contends that it could not lawfully levy more than that amount except by a vote of the taxpayers of the district at an election lawfully called and held for that purpose. Defendant challenges the legality of such election and invokes the protection of the constitutional provision providing that, except in cities of one hundred thousand population or over, the annual rate of taxation for school purposes shall not exceed forty cents on the $100 valuation; provided that such annual rate may be increased, in districts formed of cities and towns, to an amount not to exceed $1 on the $100 valuation, and in other districts to an amount not to exceed sixty-five cents on the $100 valuation, on condition that a majority of the voters who are taxpayers, voting at an election held to decide the question, vote for such increase. [Constitution of Missouri, Sec. 11, Art. X.] The question here is whether this provision of the Constitution and our statutes made to carry out same were complied with in voting an increase above the forty-cent rate allowed without any such vote.

The record here shows that at a meeting of the school board of the Morehouse District on February 24, 1928, the following order was voted:

"That the secretary be instructed to post notice for the annual election as follows: To vote a nine months' school. To vote a tax of sixty cents in excess of forty cents on the $100 valuation for School purposes, and to vote a tax of fifty cents on the $100 valuation for Building fund."

It is claimed that this order is insufficient in not designating the time and place of holding the election. Under our statute, Section 9283, Revised Statutes 1929, the annual meeting of each school district is held on the first Tuesday of April each year, and power is then given by Section 9284, Revised Statutes 1929, "to determine, by ballot, the length of school term in excess of eight months that the public schools of the district shall be maintained for the next scholastic year; also, to determine the rate, if any, in excess of forty cents on the one hundred dollars' assessed valuation to be levied for school purposes, as provided for in Section 9225." Section 9225, Revised Statutes 1929, provides that the board of education, when it deems it necessary to increase the annual rate of taxation for school purposes, shall determine the rate necessary and shall submit the question of such increase to the voters of the district. It is conceded here that this question was voted on at the annual meeting in April, 1928, and resulted in a majority vote in favor of increasing the rate from 40 cents to 100 cents for school purposes. Defendant's contention is that the order of the board of education made on February 24, 1928, submitting this question of increasing the rate at the annual election in April, 1928, does not designate the time and place of holding such election. It will be noticed that the order of the school board is that the clerk post notices for the annual election, specifying the matters to be voted on, among them "to vote a tax of sixty cents in excess of forty cents on the $100 valuation for School purposes." The record here does not show a copy of the notice of the election, but no objection is made that the notices themselves were deficient in any respect as to the time or place of holding the election. The contention is that it is the province of the school board to fix the time and place of the annual meeting and that this could not be delegated to the clerk, whose sole duty is to post the notices.

As to the time of holding the annual meeting, that is fixed by law, both for common school districts (Sec. 9283, R. S. 1929) and for town or city districts (Sec. 9341, R. S. 1929), as the first Tuesday in April of each year, so that there was no need of any further designation of the time by any order of the board. It could not fix a different time for the annual meeting. The notices of the elec-

tion when posted merely served as a reminder to the voters of the time of the annual election as fixed by law, and the clerk needed no order of the school board as to that. We are here dealing with a matter authorized at the annual school meeting, the time of which is fixed by statute, and not with a matter authorized at a special election called by the school board, the time and place of which must be fixed by the order calling the election. What is said in Thornburg v. School District, 175 Mo. 12, 28, 75 S. W. 81, to the effect that the law "does not clothe him (the clerk) with authority to order a meeting of the voters or to designate the day on which an election shall be held. The board alone had authority to do that," had reference to a special election to vote school bonds.

As to the place of holding the annual school meeting at which this increased levy for school purposes was voted, the order of the school board merely directed the secretary to post notices of the annual meeting and designated what matters to be voted on such notices should contain. In common school districts such annual meetings are to be held at the district schoolhouse if there be one, and, if not, the place of meeting shall be designated by the school board. [Sec. 9283, R. S. 1929.] Under Section 9341, Revised Statutes 1929, relating to town, city, or consolidated school districts, the annual meeting or election "shall be held on the first Tuesday in April of each year, and at such convenient place within the district as the board may designate, beginning at seven o'clock A. M. and closing at six o'clock P. M. of said day." There is a further provision of such section of the statute that in cities and towns of over two thousand population "said elections shall be held at the same time and places as the election for municipal officers." Section 9225, Revised Statutes 1929, deals specifically with the question of voting an increase of the normal annual rate of forty cents on the $100 valuation for school purposes, and provides that the board "shall submit to the voters of the school district who are taxpayers of such school district, at an election to be by such board called and held for that purpose, at the usual place of holding elections for members of such board, whether the rate of taxation be increased as proposed by said board." Section 9226, Revised Statutes 1929, contains similar provisions as to the place of holding an election for the purpose of increasing the normal rate for purchasing school building sites, or buying or erecting school buildings, or repairing or furnishing such buildings. The record in this case does not show, except inferentially, nor is it stated in the briefs or arguments here, the population of the city or town of Morehouse; or whether same is divided into wards with separate polling places, or whether the school election in question was held in connection with a municipal election. No complaint is made that the posted notices of the elec-

tion failed to disclose the proper place or places of voting or that any voter was misled, or deprived of his right to vote by not, knowing the, place to vote. The objection to the validity of the election on this ground is based purely on a failure to comply with the strict letter of the law in designating the, place where the election is to be held. Defendant cites the case of Thornburg v. School District, supra, and seeks to apply what was there said as to the necessity of designating the time of holding a special election to vote school bonds to both the time and place of holding the regular annual school meetings of the district. As we have said, the statute fixes the time of holding such annual meetings or elections and it is sufficient if the notices posted of such meeting follow the law in fixing the time. The exact place of holding such elections is so generally fixed by custom, if not by law, and such exact place is so easily ascertained by anyone desirous, of voting, that laws in that respect are liberally construed to the end that elections fairly held and which afford the voters a fair opportunity to exercise their right to suffrage will be upheld. The Court of Appeals in Martin v. Bennett, 139 Mo. App. 237, 244, 122 S. W. 779, overlooked the fact that the Thornburg case, supra, cited and relied on there, was dealing with fixing the *time of a special election,* when on the authority of that case it said that, "It is our duty to follow the decisions of the Supreme Court, and under the authority of the case above quoted from, we hold that the order of the board made March 12, 1907, was insufficient in not specifying the *place* for the election," though it correctly held that "on that order the secretary was not authorized to submit the proposition of furnishing the schoolhouse and purchasing a site for the new building," when the order of the board, as shown, was "authorizing the board of directors of said school district to borrow the sum of ten thousand dollars for the erection of additional school building."

We approve what is said in State ex rel. v. Gordon, 242 Mo. 615, 624, 147 S. W. 795; to-wit: "It is rare, indeed that, anyone desiring to cast a vote in a special election has any difficulty in finding the place where the election is to be held. Either those urging the adoption of the measure submitted or those desiring its defeat will take such an interest in the result of the election that everyone who may desire to vote thereat will have no difficulty in finding the place where he should cast his ballot. . . . The law contemplates that everything necessary shall be done to afford the voters a free and fair opportunity to vote yes or no on the proposition submitted, and unless some mandatory statute has been violated, or something has been done or omitted which has deprived the voters of a free and fair expression of their will, such election should be upheld. [Cases cited.] . . . The record is barren of even an intimation that

any voter in said county failed to understand where he should vote or was deprived of his right to vote in the special election by reason of any alleged defect or ambiguity in the notice of election as published." This was said with regard to a special election and would be even more applicable to an annual school election.

In State ex rel. Gentry v. Sullivan, 320 Mo. 362, 8 S. W. (2d) 616, 618, the notice of an election to be held in a consolidated school district specified the place of the election as "at Stoutland," a village of some three hundred people. The election was actually held at the Christian Church in that town by making public announcement on the street just before the voting began. As to this the court said: "Before the voting commenced the county commissioner made a public announcement that the election would be held at the Christian Church. It was accordingly held at that place. No evidence having been adduced that any voter was deprived of his right to vote by reason of the general nature of the notice, no right was impaired or privilege denied, and we are, in all fairness, prompted to overrule this contention. In so doing we are not without a precedent therefor in our own rulings. [State ex inf. Poage v. Higley (Mo.), 250 S. W. 61.]"

Defendant cites State ex rel. v. Martin, 83 Mo. App. 55, and Harrington v. Hopkins, 288 Mo. 1, 231 S. W. 263, but we find nothing therein justifying our holding the annual school election void for failure to sufficiently apprise the voters of the place where the election was held, and we rule this point against defendant.

■ Another objection to the validity of the increased tax rate in question is that such increase must be voted by "a majority of the voters who are taxpayers." In the estimate filed with the county court, certified to by the clerk of the Morehouse School District under date of May 15, 1928, and which served as the basis of levying school taxes of that year, it is stated: "That a majority vote, of those who are taxpayers, was cast to increase the levy for school purposes to 100 cents on the $100 valuation, provided so much is needed to raise the above amounts for teachers' and incidental funds, as provided in Section 9225, Revised Statutes 1929." The only evidence as to the voters not being taxpayers is that one of the judges of the election testified that no such test was required of those voting, but that he knew of no one voting who was not a taxpayer. The returns of the election showed that there were "113 votes cast for a levy of sixty cents in excess of forty cents on the $100 valuation for school purposes, and that there were 27 votes cast against the levy of sixty cents in excess of forty cents on the $100 valuation for school purposes." It was also shown that 233 persons voted at the election, so that a large number of voters did not vote on this proposition. Of the 233 voters present and voting on some proposi-

tions, the names of 107 were not on the assessment lists, leaving 126 voting taxpayers. Less than this number voted for increasing the tax rate. There is no proof, therefore, that anyone who voted for the increased tax rate was not a taxpayer, much less that less than a "majority of the voters who are taxpayers voting at the election" voted for such increase. This objection is not supported by the proof. We hold, therefore, that this portion of the taxes sued for is valid and to that extent the judgment is correct.

■ Defendant also refused to pay the taxes based on the levy of fifty cents on the $100 valuation "for building fund" as being illegally assessed, and this contention must be sustained. As to what is meant by "building fund," we find that Section 9312, Revised Statutes 1929, provides for dividing school revenues into three funds designated as Teachers' Fund, Incidental Fund, and Building Fund, and that "all money derived from taxation for building purposes, from the sale of school site, schoolhouse or school furniture, from insurance, from sale of bonds, from sinking fund and interest, shall be placed to the credit of the 'building fund.'" The incidental fund is derived wholly from taxes levied for incidental expenses, except that it is provided by said section "that the board of directors shall have the power to transfer from the incidental to the building fund such sum as may be necessary for the ordinary repairs of school property." The constitutional provision limiting rates of taxation (Section 11, Article X) deals with taxation "for school purposes," which is comprehensive and covers all moneys derived from taxation going into any and all the three funds mentioned. This rate is fixed at forty cents on the $100 valuation, subject to be increased by a vote of the taxpayers within fixed limits, to-wit, sixty-five cents in country school districts, and 100 cents in town and city districts. (Note that we are not now considering taxes levied to pay lawful indebtedness incurred under Section 12 of Article X of the Constitution.) When, therefore, the Morehouse School District lawfully voted an increase of taxation to 100 cents on the $100 valuation for school purposes, it exhausted its power in voting taxes for schools, with the sole exception contained in Section 11 of Article X of the Constitution, providing that "for the purpose of erecting public buildings in . . . school districts, the rate of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and two-thirds of the qualified voters of such county, city or school district, voting at such election, shall vote therefor." The term "erecting public buildings" as used in the Constitution is less comprehensive than the term "building fund" or "building purposes" as used in the statutes, and the excess levy

under the Constitution must be solely and·specifically "for erecting school buildings."

It may be, though we are not called on to decide, that a distinct addition to a building· already erected might be covered.by the term "erecting buildings," but mere alterations, improvements, or repairs of existing buildings are not so included. In Harrington v. Hopkins, 288 Mo. 1, 231 S. W. 263, where a school district had voted the increased maximum rate of 100 cents on the $100 valuation allowed for school purposes, to-wit, eighty-seven cents for teachers' fund and thirteen cents for incidental fund, and also voted ninety cents for building purposes, specified as for "repairing and furnishing," this court held same illegal, saying, after quoting the language of the Constitution: "The language of the section just quoted is too plain to need construction. It limits the collection of all taxes in a school district such as this to $1 on the $100 valuation for· all school purposes; that is, the rate cannot be increased in such a district for all school purposes in a sum in excess 'of one dollar on the one hundred dollars valuation except for the purpose· of erecting public buildings', etc., and there is no pretense that this ninety cents was voted for the purpose of erecting a schoolhouse, or other· public buildings, but solely to repair and furnish a building already existing. In no sense can the words 'furnishing' and 'repairing' be construed to mean the 'erection of public buildings,' as those words are used in the Constitution."

In this case the records of the school board are silent as to the erection of any new school building or substantial addition thereto, and the oral evidence shows that none was contemplated. The most that was shown orally was that the board "had other improvements and repairs, had to rent another building for school purposes, and was figuring on building additional room to the schoolhouse. The buildings, like any large building where children are around, were in need of repairs, and we were trying to make more school rooms and have some partitions put in." An increased tax rate, that is an increase above the ordinary forty-cent rate allowed without a vote, may well be voted for building purposes, which may include any repairs, alterations, or furnishing of school buildings, or even for purchasing building sites or buildings themselves, when same can be done "within the maximum rates prescribed by the Constitution," as is provided in Section 9226, Revised Statutes 1929, and to this end the school board may "transfer from the incidental to the building fund such sum as may be necessary for the ordinary repairs of school property." But when it comes to· voting an additional tax levy for schools beyond and in addition to the maximum rate of 100 cents on the $100 valuation, then such increase must be "for erecting school buildings" and the "increase and purpose for

which it is intended'' must be voted on. It cannot be voted to make repairs or alterations of existing buildings. [Harrington v. Hopkins, 288 Mo. 1, 10, 231 S. W. 263; Jacobs v. Cauthorn, 293 Mo. 154, 238 S. W. 443; Peter v. Kaufmann, 327 Mo. 915, 38 S. W. (2d) 1062.]

Besides this, the record here shows that on February 24, 1928, at the same meeting at which the school board ordered a submission of the increased rate for school purposes and the fifty-cent tax levy ''for building fund,'' there was on hands some $5800 in the building fund, and an order was then made to transfer $5000 from the building fund to the teachers' fund for the payment of teachers, for which there seems to be no warrant in law. The law authorizes a transfer from the incidental fund to the building fund of a sum necessary to pay for repairs on the school property, and from the building fund to the incidental fund of whatever is left over after the purpose for which same was voted is accomplished, but we find no authority to transfer money from the building fund to the teachers' fund. However that may be, later the total balance in the building fund was transferred to the teachers' fund and to the incidental fund, so that when the estimate of funds necessary to maintain the schools was certified to the county court on May 15, 1928, by the district clerk, it showed that nothing was on hand in the building fund, that it was necessary to raise $7000 for that fund and that the necessary rate for so doing was fifty cents. It thus appears that the revenues provided in the previous year of 1927 for building fund had not been used or found necessary for erecting buildings or even making repairs on same, but that such funds were transferred to the teachers' fund, thus creating the necessity of raising further building funds. It is charged, and with much show of reason, that the building tax was not being levied and collected for any real erection of buildings, but was a mere device to raise more money for operating the schools than the Constitution and law permits, and then transfer such additional funds to the teachers' fund as not being necessary for the purpose for which such fund was raised. This may be a laudable purpose from one standpoint, but from a legal standpoint it constitutes legal fraud. While this court will allow school boards large latitude and discretion in providing and expending school revenues, even to the extent of anticipating the future needs and possible deficiencies in the means provided, yet the rights of the taxpayers must be guarded and the taxes imposed kept within the constitutional limits. In holding, as we do, that this tax levy of fifty cents on the $100 valuation for building purposes is without warrant of law, we are within the principles announced in State ex rel. Johnson v. Railroad, 315 Mo. 430, 435, 286 S. W. 360, and such holding is not in contravention of what

this court held in Lyons v. School District, 311 Mo. 349, 278 S. W. 74, and Pope v. Lockhart, 299 Mo. 141, 252 S. W. 375.

By defendant's answer it is averred that a tax of ten cents on the $100 valuation for interest, and a like amount for sinking fund for the purpose of meeting the indebtedness of the district and interest on same, was illegally assessed as being wholly unnecessary, and that defendant paid same under a mistake of law and fact, and defendant asks for judgment for the return of the amount so paid. This, in effect, asks a return of taxes paid by mistake. However meritorious this may be, it is obvious that the amount so paid has long since been paid over to the Morehouse School District and by it expended. The school district which has received and expended this money is not a party to this suit and is only indirectly represented by plaintiff, who is acting in his official capacity as county collector. No judgment can go against the school district as it is not in court, and, obviously, the collector cannot be made to respond personally for money voluntarily paid him through mistake as to liability.

The case is, therefore, reversed and remanded in order that a judgment may be entered for plaintiff in accordance with this opinion. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur except *Hays, J.,* not voting because not a member of the court when cause was submitted.