CHARLES E. RUSSELL, CLARENCE L. BOLLINGER, PATRICK J. KINSELLA and ROBERT R. ROSENTHAL v. HARRY A. FRANK, T. FRANK WOOD, JOHN J. FITZWILLIAM, PAUL J. HEWITT, LOY W. LEDBETTER and OSCAR E. LIFE, comprising the Board of Education of the School District of University City; JUNE S. COURSON, Secretary of the Board of Education of the School District of University City; WALTER MILLER, Clerk of the County Court of St. Louis County; WILLIS W. BENSON, Collector of St. Louis County; and MAURICE DWYER, Treasurer of St. Louis County, Appellants.—154 S. W. (2d) 63.

Court en Banc, July 28, 1941.

Rehearing Denied, September 25, 1941.

*M. P. Phillips* for appellants; *Arthur U. Simmons* of counsel for County Clerk.

*Harold S. Cook, B. Sherman Landau* and *Eliot, Blayney & Bedal* for respondents.

536

HAYS, J.—This is a suit in equity brought by certain citizens and taxpayers of the School District of University City, Missouri, against the members of its Board of Education, their secretary, and the county clerk, collector, and treasurer of St. Louis County, in which said district is located. The object of the suit was to obtain a decree declaring illegal the levy of a school tax of forty-four cents on the one hundred dollar valuation "for building fund purposes," and to enjoin the county clerk from extending the said levy on the tax books. The tax mentioned had been authorized at a special election held on April 23, 1940. Upon the trial of the issues in Division No. 1 of the Circuit Court of St. Louis County, the chancellor found for the plaintiffs and entered a decree declaring the levy illegal and enjoining the clerk from extending it upon the tax books. From this decree the members of the Board of Education, defendants below, have appealed.

The School District of University City is a town school district organized under the laws of the State and having a population of less than one hundred thousand. At the regular election held on the 2nd of April, 1940, there were duly submitted to the voters of said district two propositions: (1) to increase the rate of taxation for general school purposes to one dollar per one hundred dollars, this being the maximum rate permitted by the Constitution for such tax; and (2) to levy a tax of forty-four cents per hundred dollars "for building fund purposes." It is this latter tax that is here involved. Both of such propositions were defeated. A few days later the school board called a special election to resubmit the same two propositions, fixing the date therefor as the 23rd of April. This time each proposition was

carried by the requisite majority. The results of the latter election were certified to the county clerk so that he could extend the levy upon the tax books of the county. Thereupon the present suit was brought. The facts developed in evidence may best be stated in the course of the opinion.

Section 11 of Article 10 of the Constitution of Missouri, cited and relied on in the plaintiffs' petition, contains a list of limitations imposed upon the powers of various local taxing authorities in the State. The portion of such section here applicable is as follows:

''For school purposes in districts composed of cities which have one hundred thousand inhabitants or more, the annual rate on property shall not exceed sixty cents on the hundred dollars valuation and in other districts forty cents on the hundred dollars valuation: *Provided,* the aforesaid annual rates for school purposes may be increased, in districts formed of cities and towns, to an amount not to exceed one dollar on the hundred dollars valuation, . . . on the condition that a majority of the voters who are taxpayers, voting at an election held to decide the question, vote for said increase. For the purpose of erecting public buildings in counties, cities or school districts, the rate of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and two-thirds of the qualified voters of such county, city or school district, voting at such election, shall vote therefor.''

Under the first of the two tax propositions, approved by the voters of University City, the school district imposed the maximum tax permitted for general school purposes—one dollar. The forty-four cents levy now involved can be sustained, if at all, only under the last sentence of the quoted section. In the case of State ex rel. Marlowe v. Himmelberger-Harrison Lumber Company, 332 Mo. 379, 58 S. W. (2d) 750, this court was called upon to construe the above quoted constitutional provision. In that case the county collector sought to enforce the collection of certain school taxes against the defendant. While certain other taxes were involved, the levy with which we are here concerned was one of fifty cents ''for building purposes.'' This levy had been duly voted by the requisite majority of the electors of the school district. The records of the school board were silent as to any contemplated erection of new school buildings or any substantial addition to existing buildings and oral evidence tended to show that no such improvements were contemplated, although there was some testimony to the effect that the board ''was figuring on building additional room to the school house.'' The record also showed that there was at the end of the current year a substantial balance in the building fund which the board ordered transferred to the teachers' fund. We held that the additional tax, over and above the constitutional maximum of one dollar which may be voted by the

·electors of the district, must be for the purpose of erecting new buildings or at least new additions to existing buildings and not for the maintenance, furnishing or repair of old buildings. In this we followed a rule laid down in our previous decisions in the cases of Harrington v. Hopkins, 288 Mo. 1, 231 S. W. 263, and Jacobs v. Cauthorn, 293 Mo. 154, 238 S. W. 443. We pointed out that a tax "for building purposes" was not necessarily a tax "for the purpose of erecting public buildings" within the meaning of the Constitution. We did not, however, rest our decision solely on the ground that the tax was improperly denominated in the election notice and on the ballots, but we held that where the obvious purpose of the levy was not to erect buildings or additions thereto, but to create a bookkeeping balance in the building fund for the purpose of later transferring the same to the general fund, the tax is void.

The principles laid down by us in the Marlowe case, supra, are not at all at variance with our decision in Peter v. Kaufmann, 327 Mo. 915, 38 S. W. (2d) 1062. In that case the evidence disclosed that the school district was not only contemplating the erection of a new building, but was actually engaged in constructing it. This building was to be paid for in part by a bond issue and in part out of the proceeds of the challenged tax. We held that under the Constitution and statutes two methods are available to a school district to finance building operations: borrowing money through a bond issue and raising money directly by a properly voted tax, and we said that it might avail itself of both sources of funds concurrently. The chancellor had there found (and we said that his finding was supported by the record) that the tax in question was actually levied for the purpose of paying for the excess in the cost of the building over and above the amount realized from the sale of bonds. We therefore impliedly found that the tax was not a mere subterfuge to gain funds to pay off an illegally created debt. The case, therefore, is in reality an authority in support of the rule announced in the Marlowe case.

It is true that in Lyons v. School District, 311 Mo. 349, 278 S. W. 74, we refused to enjoin the collection of a tax for sinking fund purposes which was obviously largely in excess of the requirements of the district for the current year. In so doing we said (278 S. W. l. c. 76):

"The charge that there was a fraudulent purpose to divert the fund to other purposes could not be dealt with by the trial court, but was a question to be dealt with when an attempt to divert might be made. These expressions are in accord with what was held in Pope v. Lockhart, 299 Mo. 141-146, 252 S. W. 375."

A distinction exists, however, between the situation involved in the Lyons case, supra, and that in the Marlowe case. In the Lyons case, while the total proceeds of the sinking fund tax might not be needed to retire bonds callable during the current year, they might be needed

for such purpose in subsequent years. The tax itself was well within the constitutional limit and was therefore valid. No wrong was committed in its levy and collection. The first wrongful act would be committed by the board when they actually sought to appropriate money realized from this tax to other than sinking fund purposes. In the Marlowe case the only situation in which the challenged tax could be constitutionally imposed at all would be one in which the purpose of the tax was to erect a building. Therefore, no such purpose existing, the levy itself was illegal and void.

With these principles of law in mind, let us examine the record. The evidence shows that the last school building erected in University City was in 1937. It is true that because of the rapidly increasing population of the district its schools had become crowded and that the board had—several years prior to 1940—acquired some sites for new buildings. It is also true that the board seems to have considered some tentative plans for such buildings. There is, however, absolutely no evidence that any definite plan had been made for their erection. Certainly no new buildings were contemplated during the year 1940 to '41. At the close of the school year of 1939 to '40—less than two months after the presently involved tax was voted—there was on hand in the building fund of the district over $95,000, which the Board proceeded to transfer to the incidental fund. On the very next day after the tax here involved was voted and at a time when, as stated, the books showed a balance of $95,000 and more in this fund, the board filed its official estimate of revenue and expense for the year 1940 to '41. In that estimate it stated that at the close of the current year (then only slightly more than a month off) there would be no balance in this fund. This statement was made in spite of the fact that there was then no building construction going on.

Plaintiffs had certified certain official reports and records of the board for the years 1937-'39 and offered the same in evidence. They were excluded by the chancellor but are contained in the abstracts and exhibits filed with us. As this is an equity suit, we may, if we find that these exhibits were legally competent and erroneously excluded consider them unless the rights of the defendants to rebut the evidence therein contained would be unfairly prejudiced. [Bueker v. Aufderheide, 345 Mo. 833, 136 S. W. (2d) 281; Mays v. Jackson, 346 Mo. 1224, 145 S. W. (2d) 392.] These exhibits tend to show the manner in which money raised by building fund tax in the years in question had been disposed of by the board. They were excluded on the theory that the School Board became a new body after each annual school election and that the new board was not bound by any action of the old one. However, it is admitted that the actual personnel of the board had not changed. The members who constituted that body for the year 1940 to '41 had all served on it for many years in the past. The question we are now

colled upon to determine is that of the purpose or intent of the board in submitting to the electors the question of this tax levy. Evidence of past action by an individual or group of individuals is relevant as bearing upon the intent with which they later perform a similar act. [Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 72 Fed. 413, 19 C. C. A. 286 (opinion by TAFT, Cir. J.); Kellogg v. Clyne, 54 Fed. 696, 4 C. C. A. 554; Foster v. Hall, 29 Mass. 89; Brownell v. Briggs (Mass.), 54 N. E. 251; Jackson v. Timmerman, 12 N. Y. 299.]

The exhibits mentioned disclosed the fact that during the period in question the ordinary operating expenses of the school system exceeded by a considerable amount its revenue from state grants, incidentals and regular school taxes. At the end of each fiscal year its books showed an operating deficit. During each of these years, in addition to the maximum general school tax of one dollar, the district had levied and collected an additional tax for building fund purposes and at the end of each fiscal year there was a sizeable balance in the building fund which the board ordered transferred to the incidental fund. So that at the beginning of each year the building fund was entirely depleted. During no one of these years had any construction been undertaken or accomplished.

Another piece of circumstantial evidence speaks loudly as to the real purpose for which the tax here involved was levied. After the special election was ordered by the board and while the matter was under consideration of the voters in the pre-election canvass, a certain pamphlet was issued and circulated. It was largely prepared by the secretary of the board and its printing was paid for out of school money. It therefore had the tacit approval of the members of the board. It is to be considered in the light of an admission by the board's agent, later ratified by the board members through paying the expenses of its publication. In this pamphlet are contained the following question and answer:

"Why is the seventeen cent increase needed (this refers to the forty-four cent tax here involved)? Because of the increased number of pupils over the ten-year period and the expenses necessary to provide for their education. This money is absolutely necessary to keep the schools in operation as they are at present, and will provide for no expansion."

A consideration of the evidence above detailed, together with all of the facts and circumstances shown by the record, leaves but one conclusion possible. That is, that the purpose for which the forty-four cent levy was submitted to the voters was not of the erection of public buildings but was to create a balance in the building fund which could be used for the general operating expenses of the school system.

We are by no means charging any bad faith on the part of the

members of the Board of Education. They no doubt found themselves confronted with a difficult situation. The operating revenues of the system derived from the State from incidental sources and from general taxation were insufficient to maintain the standard of efficiency which they deemed necessary in the interest of the children under their charge. The rate of levy for general purposes could not constitutionally be increased. A general increase in the level of assessments would be either impossible or entirely impractical. The only method therefore of operating without a permanent deficit was to levy the building fund tax, here challenged, and to use the revenue derived therefrom for ordinary expenses. But, regardless of the fact that the board had acted in good faith, the plan adopted ▆ constitutes an obvious evasion of the limitation imposed by our fundamental law. We can only repeat in this connection what we said in the Marlowe case, 58 S. W. (2d) l. c. 754:

"This may be a laudable purpose from one standpoint, but from a legal standpoint it constitutes legal fraud. While this court will allow school boards large latitude and discretion in providing and expending school revenues, even to the extent of anticipating the future needs and possible deficiencies in the means provided, yet the rights of the taxpayers must be guarded and the taxes imposed kept within the constitutional limits."

The appellants contend that the General Assembly has power to provide for the transfer of a balance from the building fund to the general fund and that it has made such provision in Section 10366, R. S. Mo. 1939. This argument is beside the point. The statute cited might indeed cover a case where a tax was in good faith levied and collected for the erection of a building but yielded more revenue than was necessary for that purpose, so that a surplus was left after the building was completed and paid for. It cannot, however, be made a cloak to shield the action of the board which has intentionally levied such a tax ostensibly for building but with the knowledge that no building would be erected and with the real purpose of spending the entire revenue derived from the tax for the maintenance of its school system.

▆ Appellants also contend that even though this tax be not for building purposes it is authorized under the general powers of the Legislature to levy taxes for State purposes non-municipal in their nature. An elaborate argument, with the citation of many authorities, is made to sustain this point. It will be unnecessary to analyze all of the cases cited because the argument is squarely opposed to the express language of the constitutional provision here involved. The section above cited imposes a special and specific limitation on school taxes. The tax in this case was levied not by the State but by the school district, which is and was a municipal corporation as we have defined that term in Laret Investment Co. v. Dickmann, 345 Mo.

542

449, 134 S. W. (2d) 65. The very purpose for which such municipal corporation is created is that of the maintenance of a school system. The taxes which may be levied by such a district are all of necessity taxes for the building of schools or the maintenance of schools after they are instituted. The language of the constitutional provision can have no meaning whatever unless it applies to the type of tax here involved. And to say that because of legislative enactment a district may disregard the constitutional limitation is to make that limitation completely meaningless and of no value. But appellants do not cite any statutes, among the large number referred to in their brief, which specifically authorize such a tax. We must, therefore rule this contention also to be unsound.

We are, therefore, forced to the conclusion that the decree entered by the chancellor was proper and for the right parties and that it should be affirmed. It is so ordered. All concur.