PRESIDENT RIVERBOAT CASINO–
MISSOURI, INC., and Aztar Missouri
Gaming Corporation, Appellants,

v.

MISSOURI GAMING COMMISSION,
Respondent.

Boyd Kansas City, Inc., Appellant,

v.

Missouri Gaming Commission,
Respondent.

Nos. SC 81616, SC 81685.

Supreme Court of Missouri,
En Banc.

March 21, 2000.

William A. Brasher, Paul E. Littleton, St. Louis, for appellants in No. SC 81616.

Daniel Bukovac, N. Chris Walters, Kansas City, for appellant in No. SC 81685.

**1.** All statutory citations are to RSMo 1994,

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael W. Bradley, Asst. Atty. Gen., Jefferson City, for respondent.

DUANE BENTON, Judge.

Three riverboat casinos seek declaratory judgment that: (1) the "admission fees" they pay to the Gaming Commission Fund are unconstitutional, and (2) the scheme of reimbursement for Highway Patrol services – if not unconstitutional – violates the governing statutes. The circuit court ruled for the Missouri Gaming Commission. Because of the constitutional challenges, this Court has exclusive jurisdiction. *Mo. Const. art. V, sec. 3.* Affirmed.

I.

The Commission licensed as excursion gambling boats: President Riverboat Casino–Missouri, Inc.; Aztar Missouri Gaming Corporation; and Boyd Kansas City, Inc. When these Boats applied for a license, they paid "license fees" to cover the cost of investigation. *Section 313.807.*[1] In addition, the Boats paid an annual license fee. *Id.* The license fees were deposited in the Gaming Commission Fund. *Section 313.835.*

The Boats paid "admission fees" of $2 per customer, with $1 allocated to the Gaming Commission Fund, and $1 to the home dock city or county. *Section 313.820.* The Boats were required to pay the admission fees, whether or not they charged their customers any fee. *Id.*

The Boats also paid a 20 percent tax on gross receipts from gaming. *Section 313.822.* The home dock city or county received 10 percent of this tax, with the remainder to the Gaming Proceeds for Education Fund. *Id.*

Not counting the Gaming Proceeds for Education Fund, the receipts into the (separate) Gaming Commission Fund exceeded the Commission's administrative costs, by

unless otherwise indicated.

638

at least a three-to-one ratio in fiscal years 1996, 1997, and 1998.

## II.

The circuit court held that the admission fees are a tax. The Boats claim that the admission fees regulate interstate commerce, in violation of the Commerce Clause of the United States Constitution, *U.S. Const. art. I, sec. 8.*

The admission fees are deposited in the Gaming Commission Fund, created by section 313.835. Its history is summarized in the appendix to this opinion. In all of its versions, the Gaming Commission Fund has funded both the Commission, and other public programs. *See section 313.835.* The 1992 and 1993 versions of section 313.835 deposited all the admission fees in the general revenue fund, to support the entire budget. *1992 Mo. Laws 1236; section 313.835 RSMo Supp.1993.* The next version of section 313.835 was in effect from August 28, 1994, to August 28, 1998. *Section 313.835 RSMo 1994, as amended by 1996 Mo. Laws 217.* It directed that unencumbered funds – beyond the costs of the Commission and certain veterans, homeless, and anti-gang programs – shall be transferred to the general revenue fund, beginning July 1, 2000. *Id.*

As the Gaming Commission Fund grew, earmarkings grew. Eventually, section 313.835 financed – in addition to the Gaming Commission itself – several recipients: deterring gang-related violence, helping the homeless, recognizing and providing for veterans, supporting the national guard, providing college scholarships, and financing early childhood development. *Section 313.835 RSMo Supp.1998.* The General Assembly has earmarked the entire Fund, intending that all "net proceeds" will be spent. *Section 313.835.1;.1(2);.1(3)(d) RSMo Supp.1998.*

The Boats assert that the legislature intended to impose a fee, not a tax, because (1) the statutes have always used the label admission "fee," *sections 313.820.1; 313.835.1,* and (2) the first subsection of

313.835 deposits the admission fees into a fund – the Gaming Commission Fund – that is separate from the Gaming Proceeds for Education Fund, which receives the gross receipts tax under section 313.822.

■ Although these two points are accurate, what is labeled a fee may in fact be a tax, based on its "real object, purpose and result." *See State ex rel. Wyatt v. Ashbrook,* 154 Mo. 375, 55 S.W. 627, 628–29 (1900). This Court decides such issues by applying the long-established distinction between a tax and a fee:

Taxes are proportional contributions imposed by the state upon individuals for the support of government and for all public needs....Taxes are not payments for a special privilege or a special service rendered....Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes, ... unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures ... rather than compensation of public officers for particular services rendered.

*Leggett v. Missouri State Life Ins. Co.,* 342 S.W.2d 833, 875 (Mo. banc 1960).

■ The admission fees – as paid by the Boats to the state – are not payments for a special privilege, a special service, or a specific purpose. The admission fees do not compensate public officials for particular services. The earmarked recipients of the Gaming Commission Fund are "customary governmental expenditures." Under the definition in *Leggett,* the admission fees are a tax.

■ State taxes levied on interstate commerce are not per se invalid. *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 615, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1977). The practical effect, rather than the formal language of the statute, is

decisive. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). A four-prong test determines whether a state tax unreasonably burdens interstate commerce. *Id.* A state tax will not violate the Commerce Clause if it is: (1) applied to an activity with a substantial nexus with the state, (2) fairly apportioned, (3) non-discriminatory against interstate commerce, and (4) fairly related to the services provided by the state. *Id.*

*Substantial Nexus* : All activities of the Boats occur in Missouri. *Section 313.820.1.* There is undoubtedly a substantial nexus with this state.

*Fairly Apportioned* : By the record in this case, the Boats are not subject to taxation by other states. There is no issue of unfair apportionment.

*Non–Discrimination Against Interstate Commerce* : The admission fees are measured by Missouri patrons as well as out-of-state patrons (estimated as high as 30 percent). Missouri treats intrastate the same as interstate commerce.

*Fairly Related to Services* : The measure of the tax is reasonably related to the Boats' contact with Missouri. *See Commonwealth Edison,* at 626, 101 S.Ct. 2946. The tax funds state services that improve the general welfare. Having chosen to operate in Missouri, the Boats – three Missouri corporations – enjoy the protection of state laws and the benefits of state services. The admission fees are fairly related to the services provided by the state.

## III.

Highway Patrol officers serve as "gaming agents" aboard the Boats, by agreement between the Commission and the Patrol. *See State ex rel. Ryan v. Carnahan,* 960 S.W.2d 549, 550 (Mo.App.1998). The Commission has the authority to establish the amount of services and staff necessary to protect the public on any Boat. *Sections 313.004.9, 313.824.* The

Boats must reimburse the Commission for these costs. *Id.* The reimbursements are deposited in the Gaming Commission Fund, and then transferred to the Patrol as an "administrative expense" of the Commission. *Section 313.004.9.*

■ The Highway Patrol reimbursements are a fee. The Boats pay "for services rendered in connection with a specific purpose." *Leggett,* at 875. It is undisputed that the reimbursements compensate the Patrol for particular services rendered. In addition, unlike the admission fees, the reimbursements do not pay for various customary governmental expenditures, but only for Patrol services.

■ The Boats claim this reimbursement violates the Commerce Clause, citing *Evansville–Vanderburgh Airport Authority District v. Delta Airlines, Inc.,* 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972), and *Reidy Terminal, Inc. v. Director of Revenue,* 898 S.W.2d 540 (Mo. banc 1995). *Evansville* sets a three-part test, whether the fee: (1) discriminates against interstate commerce, (2) reflects a "fair, if imperfect, approximation" of a value of the benefit, and (3) is excessive in relation to the cost incurred by the state. *Reidy,* at 542.

The Boats do not invoke the first prong of the test, because the fee does not discriminate against interstate commerce. The Boats rely on the second and third prongs – that the reimbursements do not fairly approximate the benefits to the Boats, and are excessive in relation to the state's costs.

The reimbursements pass this test. They pay the exact cost of the Patrol's law enforcement, a fair approximation of the benefit to the Boats. The reimbursements are not excessive, because the Commission cannot recover more than "the full cost" of the administrative costs of the Patrol. *Section 313.824.* The reimbursements thus do not violate the Commerce Clause

of the United States Constitution, *U.S. Const. art. I, sec. 8.*[2]

### IV.

In a related statutory point, the Boats assert that the Patrol reimbursements are beyond the "sole purpose" of the Gaming Commission Fund.

True, section 313.835.1 includes the statement that the "sole purpose" of the Gaming Commission Fund is to cover "the administrative costs of the commission." *See Part II of this opinion.* However, these administrative costs include the "administrative expense" of the Patrol services. *Section 313.004.9.* Therefore, the Patrol services are within the "sole purpose" of the Fund.

### V.

Boyd objects that the admission fees and reimbursements bear no reasonable relation to the cost of the Commission's services, and thus violate the Takings Clause and the Due Process Clause of the United States Constitution, *amends. v. and XIV,* and the Missouri Constitution, *art. I, secs. 10 and 28.*

#### *Takings Clauses*

The admission fees are a tax, not a fee. Taxes are not takings of private property in violation of the Constitution. *City of Marshfield v. Brown,* 337 Mo. 1136, 88 S.W.2d 339, 340 (1935).

The Highway Patrol reimbursements are a fee that is reasonably related to the administrative costs. "[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of governmental services." *United States v. Sperry Corp.,* 493 U.S. 52, 63, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989); *ITT Lyndon Life Ins. Co. v. Crist,* 778 S.W.2d 27, 29 (Mo.App.1989).

#### *Due Process*

The Due Process clauses do not require that taxes be reasonably related to the value of the services provided to the taxed activity. *Commonwealth Edison,* at 622, 101 S.Ct. 2946. Instead, taxes distribute the burden of the cost of government: "The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes." *Id.,* at 622–23, 101 S.Ct. 2946, citing *St. Louis & S.W.R. Co. v. Nattin,* 277 U.S. 157, 159, 48 S.Ct. 438, 72 L.Ed. 830 (1928) and *Thomas v. Gay,* 169 U.S. 264, 280, 18 S.Ct. 340, 42 L.Ed. 740 (1898).

The Highway Patrol reimbursements compensate for the full cost of gaming agents. *Section 313.824.* Because of this reasonable relation, there is no due process violation. *See ITT,* at 29; *cf. Sperry Corp.,* at 63, 110 S.Ct. 387.

### VI.

Two Boats – President and Aztar – claim that the Commission's fees and reimbursements are an invalid exercise of the police power because they exceed the Commission's administrative costs.

As discussed, the admission fees are a tax, imposed by statute. *Section 313.820.1.* The admission fees come from the taxing power of government and not from the police power. *See Kansas City v. School Dist. of Kansas City,* 356 Mo. 364, 201 S.W.2d 930, 932 (1947).

The Boats invoke the case of *Russell v. Frank,* 348 Mo. 533, 154 S.W.2d 63 (Mo. banc 1941), which addresses the limited taxing power of a political subdivision (acting in bad faith). *Id.* at 67. Unlike *Russell,* here the General Assembly enacted a state tax pursuant to its constitutional authority. *Mo. Const. art. X, sec. 3; see Kansas City,* at 932.

---

2.  The Boats claim that the Commission's administrative costs could be paid solely by the admission fees, thus eliminating the need for reimbursements. To the contrary, the legislature believes that the admission fees should support both the Commission, and other public services. *Section 313.835.*

As for the reimbursements, they are a fee, not governed by the taxing power, but subject to the police power. *See Kansas City,* at 932. The police power is limited by: (1) the rights guaranteed by the Constitution, (2) the necessity of a legitimate public purpose, and (3) a reasonable exercise of the power. *See State ex rel. City of Macon v. Belt,* 561 S.W.2d 117, 118 (Mo. banc 1978); *Missouri Dental Bd. v. Alexander,* 628 S.W.2d 646, 650 (Mo. banc 1982); *ABC Security Service, Inc. v. Miller,* 514 S.W.2d 521, 526 (Mo.1974). Here, the reimbursements do not violate constitutional rights, do serve the legitimate purpose of regulating gaming, and are reasonably exercised to finance (exactly) the service provided. *See Mo. Const. art. III, sec. 39(e); 313.004.9; 313.824.* The reimbursements do not violate the limits on the police power.

## VII.

The Boats object to paying any reimbursement for Highway Patrol services. Section 313.824 states:

> The commission shall establish by rules and regulations the amount of staff necessary to protect the public on any excursion gambling boat. The excursion gambling boat licensee shall reimburse the Commission for the full cost of such staff.

The Boats assert that the Commission, by rule, must specifically enumerate "the amount of staff," or else they do not have to pay for "such staff."

In fact, another statute also authorizes the Commission to require reimbursements from the Boats. Section 313.004.9 states:

> The commission may enter into agreements with the Federal Internal Revenue Service, the state attorney general or any state, federal or local agency the commission deems necessary to carry out the duties of the commission.... When such agreements are entered into for responsibilities relating to excursion gambling boats, the commission shall require excursion gambling boat licensees

to pay for such services under rules and regulations of the commission.

Expressly invoking section 313.004, the Commission adopted a rule:

**11 CSR 45–7.145 Reimbursement for Cost of Commission Agents**
*PURPOSE: This rule establishes the procedure for reimbursing the commission for the cost of commission agents.*
(1) Each holder of a Class A license shall reimburse the commission on a monthly basis for the full cost of services provided pursuant to any agreement the commission has entered into with the Federal Bureau of Investigation, the Federal Internal Revenue Service, the Missouri State Highway Patrol, the state attorney general or any state, federal or local agency the commission deems necessary to carry out the duties of the commission when such agreements result in services provided for the supervision or regulation of the licensee.

The Rule requires reimbursements for "services provided pursuant to any agreement" between the Commission and the Highway Patrol. The Rule thus incorporates by reference the agreement between the Commission and the Patrol. That agreement leaves the amount of staff to the "mutual consent and agreement of the Superintendent of MSHP and the Executive Director of MGC."

Incorporation by reference may be by a "specific and descriptive reference" to the source adopted. *State ex rel. Cairo Bridge Commission v. Mitchell,* 352 Mo. 1136, 181 S.W.2d 496, 498 (banc 1944). Here, the regulation adopts the source – the agreement – and thus incorporates the part of the agreement that particularly relates to the subject of the adopting rule. *See id.* at 498–99; *City of Warrensburg v. Board of Regents of Central Missouri State University,* 562 S.W.2d 340, 343–44 (Mo. banc 1978).

The Boats argue that section 313.824 requires a specific enumeration of the amount of staff. In fact, section 313.824 uses only the words "amount of staff." By incorporation of the Commission–Patrol

agreement, Rule 11 CSR 45–7.145 defines the "amount of staff" as that determined by the Highway Patrol superintendent and the Commission's executive director. The Commission thus sufficiently established the amount of staff, the cost of which the Boats shall reimburse.

The Boats cite *NME Hospitals v. Department of Social Services*, 850 S.W.2d 71, 74–75 (Mo. banc 1993), where the agency never promulgated a rule before implementing a statewide policy. In this case, the Commission promulgated a rule before requiring reimbursement for Highway Patrol services.

## VIII.

The admission fees are a tax. The Highway Patrol reimbursements are a fee. Neither one violates the constitutional provisions, the statutes, or the rules raised in this appeal. The judgment of the circuit court is affirmed.

All concur.

## APPENDIX

### History of Section 313.835

1992　Law: The People adopted, by referendum, the original section: "All revenue received by the commission from license fees and admission fees authorized under the provisions of sections 1 to 19 of this act shall be deposited in the state treasury to the credit of the general revenue fund." *1992 Mo. Laws 1236, H.B. 149, sec. 16 (effective Nov. 3, 1992)*.

1993　Amendment: Creates the Gaming Commission Fund in the state treasury. In addition to license fees and admission fees, adds three types of moneys to be deposited in the Gaming Commission Fund:

(1) penalties,[3]

(2) administrative fees, and

(3) reimbursement for services provided by the Commission.

States that the "sole purpose" of the Fund is to fund the administrative costs of the commission relating to excursion gambling boat operations. Provides that excess moneys are transferred, at the end of the fiscal year, to the general revenue fund, with the first $500,000 earmarked for programs for the homeless and to deter gang-related violence. States that moneys deposited into the Fund are not proceeds of excursion gambling boat operations, and are state funds under art. IV, sec. 15 of the Missouri Constitution. *1993 Mo. Laws 899; S.B. 10 & 11, sec. 16 (effective Aug. 28, 1993)*.[4]

1994　Amendment: Deletes annual transfer to the general revenue fund. Instead distributes first $500,000 directly to counties and cities for the homeless and gang programs; with the remaining unencumbered funds to the Veterans' Homes Capital Improvement Trust Fund. Beginning July 1, 2000, all remaining unencumbered funds are transferred to general revenue. *1994 Mo. Laws 840, S.B. 427 & S.B. 740 (effective Aug. 28, 1994)*.

1996　Amendment: Makes technical changes. Adds veterans' cemeteries as a recipient. *1996 Mo. Laws 217, H.B. 832 (effective Aug. 28, 1996)*.

1998　Amendment: Adds that moneys in the Gaming Commission Fund for fiscal year 1998 and prior years are transferred to the Veterans' Commission Capital Improvement Trust Fund (to be used for homes, cemeteries, memorials and museums).

---

**3.** In *Missouri Gaming Com'n v. Missouri Veterans' Com'n*, 951 S.W.2d 611 (Mo. banc 1997), this Court held that penalty fines must be distributed as required by article IX, section 7 of the Missouri Constitution, to the "county school fund."

**4.** This Court examined the 1993 amendment in *Harris v. Missouri Gaming Com'n*, 869 S.W.2d 58 (Mo. banc 1994), and found it unconstitutional for reasons unrelated to this case.

The remaining net proceeds in the Fund for fiscal year 1999 and thereafter, are distributed to:

(1) the Veterans' Commission Capital Improvement Trust Fund ($3 million),

(2) the Missouri National Guard Trust Fund ($3 million),

(3) the Missouri College Guarantee Fund ($3 million),

(4) the Early Childhood Development, Education and Care Fund (100 percent of remaining funds, with detailed instructions on how to administer the fund), and

(5) the Missouri College Guarantee Fund (another potential $1.5 million).

*1998 Mo. Laws 598, H.B. 1519 (effective Aug. 28, 1998).*