**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00121-CR
NO. 09-22-00122-CR
NO. 09-22-00123-CR
NO. 09-22-00124-CR

_____

**EMANUEL PEREIRA PEREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause Nos. 20-34625, 20-34626, 20-34627 and 20-34628**

**MEMORANDUM OPINION**

Emanuel Pereira Perez appeals his conviction for three counts of Aggravated Sexual Assault of a Child and one count of Indecency with a Child. *See* Tex. Penal Code Ann. §§ 22.021, 21.11. A jury found Perez guilty of each count and sentenced Perez to seventy years' incarceration for each count of aggravated sexual assault of a child and twenty years for indecency with a child.  The Court ordered the seventy-

1

year sentences to run concurrently and the twenty-year sentence to run consecutive to the seventy-year sentences.

In four issues on appeal, Perez argues the trial court erred by not asking for challenges for cause during jury selection, abused its discretion by dismissing a juror who did not have a disability as outlined in the Texas Code of Criminal Procedure, and erred when it commented on the weight of the evidence during direct examination of a State's witness. Finally, he contends the trial court judge was not a "neutral arbitrator [*sic*]." We affirm.

### Background

Due to the nature of the issues on appeal, we will recite the background facts necessary to our discussion within each issue. In March 2022, Perez was convicted of three counts of Aggravated Sexual Assault of a Child and one count of Indecency with a Child. *See* Tex. Penal Code Ann. §§ 21.11, 22.021. Perez timely appealed.

### Issues One and Two

Because issues one and two both pertain to jury selection, we address these issues together. In his first issue, Perez argues the trial court erred by not asking for challenges for cause during jury selection. Specifically, Perez contends that during jury selection, the trial court did not ask the State or defense for challenges for cause because it expressed "frustration with the fact that there were not enough potential

2

jurors on this case and implied that this mistake might result in the panel being 'busted.'"

The following exchange occurred during jury selection.

[THE TRIAL COURT]: We recall the cases involving Emanuel Perez in Cause Nos. 20-34625, 34626, 34627 and 34628. The defendant and his attorneys and the State's attorneys are present. The Court has received a jury compilation based upon the strikes made by the parties. Have the parties received this list, reviewed it; and any objections to seating the jurors as compiled?

[THE STATE]: No objection, Your Honor.

[TRIAL DEFENSE ATTORNEY]: None from the defense, Your Honor.

Nothing in our rules requires the trial court to specifically request whether the parties have any challenges for cause. The trial court here asked the parties if they had any objections to seating the jurors as compiled, and the defense and State announced they had no objections. The Code of Criminal Procedure article 35.16 addresses challenges for cause made during voir dire, and it provides: "(a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury. *A challenge for cause may be made by either the state or the defense* for any one of the following reasons[.]" *See Hicks v. State*, 606 S.W.3d 308, 315 (Tex. App. 2020) (emphasis added). The burden to object to a prospective juror lies with the party who is claiming the juror isn't qualified to serve on the jury. Perez did not raise any

3

objections or make a challenge for cause at the end of jury selection to any jurors selected to serve on the jury in his trial. Therefore, he failed to preserve the complaint he raised in his first issue for our review in his appeal. *See Buntion v. State*, 482 S.W.3d 58, 69 (Tex. Crim. App. 2016) (holding a party did not preserve objection to the jury when he failed to object after the trial court asked the parties if there were any objections to the jury "as seated or selected").

In his second issue, Perez argues that the trial court erred when it replaced a juror accused of sleeping during the trial. When the juror was questioned, he denied that he was sleeping. According to Perez, the trial court's decision to replace the juror isn't supported by the record since the juror, when questioned, denied he was sleeping. However, the record shows that after the trial court questioned the juror, the trial court told the parties that the court had been watching the juror, he appeared to be sleeping, was not paying attention, and that the court intended to remove the juror and replace him with an alternate. Perez didn't object to the court's proposal. After the juror told the trial court he was not sleeping, the trial court excused the jury and had the following discussion about the juror with the parties:

> THE COURT: Okay. You can go. Thank you. Is somebody helping you? The jury has exited. We've got an obvious problem with a juror that is constantly sleeping. The juror next to him, to his right, I've watched, has had to wake him up four or five times during this last witness. During the last witness, which I would say is probably the most serious witness in this case as far as the impact or certainly what was going to be provided in the State's case in chief. What do you-all want to do? He's got an issue. He's been sleeping since the first witness.

4

We've seen it. The bailiffs have told me literally every witness, he has fallen asleep and he has had to be constantly awakened. He has not – he does not have the ability to pay attention to this testimony. He has not heard it when he's sleeping. What do you-all want to do?

[THE STATE]: Your Honor, I would ask that the Court replace him with the alternate juror. If he's been sleeping through the testimony, the evidence in this case, he's not capable of making a decision in reaching a verdict.

THE COURT: What do you-all say? What's the defense say? I mean, you've got a vantage point. I think it's readily apparent to all of us that the man is sleeping. The question is: Is that something that an alternate who is available can sit for? I mean, it's clear to this Court that he has missed vast amounts of evidence. He's completely and totally been asleep and he cannot – it doesn't take him long after a break to fall asleep, which renders a very great concern. I've done this for a long time. I've really never seen a juror in my life who has this issue. What do you-all say?

[TRIAL DEFENSE ATTORNEY]: We'll defer to the Court.

THE COURT: All right. Why don't we – should we bring him in and ask him if he can explain himself or will it make a difference? I don't know how – no matter what, if it's narcolepsy or medicine or an issue that is not being – that he is not being treated for, I don't know how that can really replace the failure to listen to the evidence and hear the evidence.

[TRIAL DEFENSE ATTORNEY]: Let's bring him in.

[…]

THE COURT: Here's what the Court decisions have stated, because there is not a clear statute on it. But the decisions under Article 33.011 under alternate jurors states, first of all, that the trial court has discretion to determine whether a juror has become disabled and to seat an alternate juror. Disability of a juror that authorizes replacement with alternate jurors means the jurors are suffering from a physical illness, mental condition or emotional state that would hinder or inhibit the

5

juror from performing his or her duties as a juror or that the juror is suffering from a condition that inhibits him from fully and fairly performing the functions of a juror. If you're not listening to the evidence, you have no ability to function as a juror, because a juror is supposed to consider all the evidence and in a discerning way determine whether beyond a reasonable doubt has been met or not. So, from his manifestations, he is suffering under some kind of a physical, mental or emotional state where he is not coherent, lucid and conscience[sic] during the evidence.

[…]

[]I'm going to bring the man in, if there is no objection?

[TRIAL DEFENSE ATTORNEY]: No objection, Judge. I just think based on what you just read, I think you have to make a finding of disability.

THE COURT: Well, I can listen –

[TRIAL DEFENSE ATTORNEY]: At least, that's how it seemed to me; but we'll defer to the Court however the Court wants to handle it.

THE COURT: Whatever is causing his inabilities to stay awake is some problem because it also states here that would hinder or inhibit him from fully and fairly performing the function of a juror and I think we all have to agree that the full and fair functioning of a juror demands being awake.

[…]

(Juror Enters Courtroom)

THE COURT: [Juror], we have been watching here. You're having problems staying awake for whatever reason. The Court has the discretion to replace a juror who seems or appears unable to continue to serve as a juror. One of the most important things is the ability to be awake and be listening to all the testimony and evidence. I'm watching people awake nudge you to keep you awake. The bailiffs have been watching. I've been watching, and it has been consistent. I don't know

6

if it's maybe physical or a medical issue or whatever. Maybe you're taking some medicine but you are not able to stay awake and the most important thing that jurors have to do are be awake and lucid during all of the testimony and if someone was asleep and it was determined, there is an argument that that was maybe the most important piece of evidence that was presented when they were not awake, see. So, can you tell me if – and you don't have to divulge any medical things but you're struggling and I don't think that's probably normal of you but you're struggling here and for whatever reason, that – we can't go and redo all the testimony, you know.

A JUROR: I'm sorry.

THE COURT: But number one, thank you for your service as a juror but –

A JUROR: I didn't mean to give that impression.

THE COURT: But it's obvious. You have to know. They've been – people have been nudging you to –

A JUROR: It's easier for me to – I've been pretty lucid, and it's easier for me to pay attention and be involved with my eyes shut. I'm not sleeping over there. I snore and everything when I sleep, and I stretch and all that. It was just easier for me to follow along and some of the things that were said that I understood and heard, I think –

THE COURT: Are you saying to this Court that you have heard all of the testimony?

A JUROR: Yes.

THE COURT: Well, you could have fooled all of us.

A JUROR: I didn't mean to give that impression.

THE COURT: When they nudge you, it's kind of like when people get stunned awake.

A JUROR: I'm sorry.

THE COURT: It's not – look, it's easy enough to replace. We have an alternate to replace. And you, there is no shame in this.

A JUROR: Well, I don't mean to bother anyone.

THE COURT: It's not bothering but we have constitutional rights and issues. We have people who are all part of the allegations surrounding this indictment and it's obvious people are seeing what appears to be sleeping and that does not render any decision of this jury when you have to deliberate. People lose faith that that's being done in the best fashion when they see, and they can see.

A JUROR: I'm sorry to leave that impression. These glasses, too, are brand-new. I'm getting used to them. In fact, they were prescribed by a doctor because of the glare on the lights. So, it's just easier and more comfortable for me to shut my eyes; but no, I'm not asleep. I'm keeping abreast of everything; but if it's a bother to you, Judge Stevens, and your personnel and this court, I don't mind being removed. Sorry.

THE COURT: It's just an apparent concern that everybody has.

A JUROR: No, sir, I'm fine.

THE COURT: So, you're saying that –

A JUROR: I can't promise that my eyes won't shut.

THE COURT: Sometimes I just – I wear contacts and sometimes it gets irritated and it's more comfortable to close your eyes.

A JUROR: From my arrival on yesterday when I was first summoned until this afternoon, 3:00 o'clock, I've been lucid and involved and paying attention.

THE COURT: In all the testimony?

A JUROR: Yes.

THE COURT: You haven't fallen asleep at all?

A JUROR: No.

THE COURT: All right. Okay. Okay.

A JUROR: But with all due respect, I can continue or it's your discretion for me to –

THE COURT: All right. Well, I can't disprove that. I didn't hear snoring, I must say.

A JUROR: I'm not asleep.

THE COURT: But it appears if you were resting your eyes, you had us all fooled that you were asleep. Okay. All right. Just be – it's an open courtroom. So people come in, and they see what they see. They can see and so, we all need to be –

A JUROR: Okay.

THE COURT: -- a hundred percent –

A JUROR: Yes.

THE COURT: -- for this to all be legitimate, as important as it is.

A JUROR: Yes.

THE COURT: You can do that?

A JUROR: Yes.

THE COURT: You can do that? You can – you're alert in all of this is what you're saying to me, and you've heard all the testimony?

A JUROR: Yes.

THE COURT: Okay. All right. Then we'll bring everybody in here in a few minutes, okay? Thank you.

A JUROR: Am I excused?

THE COURT: No, sir. But you can leave.

(Juror Exits Courtroom)

THE COURT: All right. Now we go to he says what he had to say, but I've lived long enough to know sleeping when I see it. Everybody is looking and the people next to him are having to nudge him and he jerks awake as though he has been sleeping. I mean, if he's not sleeping, you could have fooled me in my lifetime of experience and life. It sure appeared to me that he was falling asleep consistently through this trial. So, what do we do? I can still – I've heard what he has to say but that doesn't mean that – does it defy logic – is it enough to defy the logic and our experiences in life? We know sleep when we see it, my goodness. But he had a good answer but the question is, when they nudge him awake, I can't – I don't believe that he was – I think he's just anxious not to disappoint himself and others here but the apparent – it's apparent that he is not – he's suffering from some issue that he may not have disclosed but it's obvious that he is – we all know sleeping when we see it. You don't have to snore. The State is asking for him to be released or not?

[THE STATE]: Yes, Your Honor, the State is. I think that what he disclosed to you upon your questioning is understandable that he would not want to be in a position where he feels like he's done something wrong or be in trouble.

THE COURT: The fact –

[THE STATE]: I believe he was sleeping.

THE COURT: The fact of the matter is we all know it when we see it and the man, I've never – it's obvious. We all have lived long enough to know when somebody is not paying attention or is asleep and this is – every trial in this room requires 100 percent. Some people get groggy and that's why we get these breaks, but he has been out. I mean, his head is on his chest and has been in every witness that I've watched and I started early. In fact, this afternoon, it started within or the morning, it started within a few minutes of us – and I've been watching today and I'm going whatever happened yesterday, he hasn't recovered from. From the defense, do you-all object?

10

[TRIAL DEFENSE ATTORNEY]: No, Your Honor.

Perez complains the trial court abused its discretion by determining the juror had a "disability" that required his removal from the panel. *See* Tex. Code of Crim. Proc. Ann. Art. 33.011(b). As we stated above, Perez did not preserve this issue for appeal. He did not object during the discussion regarding the juror nor did he object when the trial court indicated it was going to replace the juror with the alternate. Generally, a defendant must make a timely, specific objection at trial or he forfeits his complaint on appeal. *See* Tex. R. App. P. 33.1(a)(1)(A). *See also Cooks v. State*, 844 S.W.2d 697, 718 (Tex. Crim. App. 1992). We overrule the appellant's first and second issues.

## Issue Three

In his third issue on appeal, Perez argues the trial court erred when it commented on the weight of the evidence during an objection. Perez contends that the judge commented on the weight of the evidence when, after an objection that the question called for speculation, the trial court overruled the objection and stated that the witness would be "the best person in the world to answer the question."

Perez did not object at trial to the trial court's statement regarding this witness. Generally, a defendant must make a timely, specific objection at trial or he forfeits his complaint on appeal. *See* Tex. R. App. P. 33.1(a)(1)(A). And generally, the defendant must timely object to the trial court's comments or remarks, or the

11

defendant forfeits his right to complain on appeal. *Sharpe v. State,* 648 S.W.2d 705, 706 (Tex. Crim. App. 1983).

The defendant contends the trial judge's comment violates art. 38.05, Code of Crim. Proc. which states the trial court "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case[.]" *See Proenza v. State,* 541 S.W.3d 786, 792 (Tex. Crim. App. 2017). A comment violates Article 38.05 if it is "reasonably calculated to benefit the State or prejudice the defendant's rights." 541 S.W.3d at 791. If such an error occurs and is raised as a freestanding statutory complaint, it is subject to a non-constitutional harm analysis. *Gonzalez v. State,* 616 S.W.3d 585, 594 (Tex. Crim. App. 2020). Here, we conclude the complained-of-statement did not violate Article 38.05 because it was not reasonably calculated to benefit the State or prejudice the defendant's rights. *See Proenza,* 541 S.W.3d at 791. Alternatively, appellant suffered no harm because the remark did not affect his substantial rights. *Gonzalez,* 616 at 594.

We also disagree with Perez's assertion that the comment by the trial court to the victim's Mother deprived him of a fair and impartial trial. The trial court's comment did not bear upon Perez's presumption of innocence, nor did it vitiate the jury's impartiality. *See Jasper v. State,* 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). We overrule Perez's third issue.

**Issue Four**

In his last issue, Perez contends that the trial court was not a "neutral arbitrator [*sic*]," citing to three separate incidents, including an instance where he claims the trial court commented on the weight of the evidence and explained to the State how it could qualify an outcry witness.

Due process requires a neutral and detached trial court. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973). When an appellant claims judicial bias, we review the entire record to determine whether it shows the trial court's alleged bias denied the appellant due process of law. *Ex parte Freeman*, 778 S.W.2d 874, 877 (Tex. App.—Houston [1st Dist.] 1989, no pet.). The proponent of a claim of bias must demonstrate a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

"[T]he terms 'bias' and 'prejudice' do not encompass all unfavorable rulings towards an individual or her case, but instead must 'connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess …, or because it is excessive in degree.'" *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd) (emphasis in original) (quoting *Liteky*, 510 U.S. at 550). Absent a clear showing of bias, we presume a trial court's actions were neutral and detached. *Brumit v. State*, 206

S.W.3d 639, 645 (Tex. Crim. App. 2006); *Steadman v. State*, 31 S.W.3d 738, 741 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

Article 38.05 of the Code of Criminal Procedure provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. Ann. Art. 38.05; *see also Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003) (holding that a trial judge must refrain from making any remark calculated to convey his opinion of the case because jurors give special and peculiar weight to the language and conduct of the trial judge). To comply with this directive, a trial judge should limit his or her comments from the bench and maintain an attitude of impartiality throughout the trial. *Strong v. State*, 138 S.W.3d 546, 552 (Tex. App.—Corpus Christi 2004, no pet.); *Hoang v. State*, 997 S.W.2d 678, 680 (Tex. App.—Texarkana 1999, no pet.). "A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, that indicates any disbelief in the defense's position, or that diminishes the credibility of the defense's approach to its case." *Hoang*, 997 S.W.2d at 681 (citations omitted). To constitute reversible error "any unauthorized comments must be reasonably calculated to benefit the State or prejudice a defendant's rights." *Strong*, 138 S.W.3d at 552. However, "[a] judge can lawfully provide guidance and

14

manage the presentation of evidence from the bench without abandoning his role as an independent arbiter." *Id*. at 552 (citing Tex. R. Evid. 611(a)).

Perez complains that the trial court's partiality is reflected by (1) the trial court's comments made during an objection to testimony from one of the State's witnesses, (2) the trial court's comments made during the State's attempt to qualify an outcry witness, and (3) going into "unnecessary details" about the allegations against Perez during jury selection. With each contention, we review the record as a whole, to determine whether there is evidence to support Perez's allegation of judicial bias. *See Liteky*, 510 U.S. 540 at 555-56; (requiring appellate review of judicial bias to look for judicial remarks during the course of trial for "deep-seated favoritism or antagonism"); *see also Gonzalez v. State*, No. 03-12-00620-CR, 2014 WL 6901181, *6 (Tex. App.—Austin Dec. 4, 2014, pet. ref'd) (mem. op) (not designated for publication) (examining the record as a whole to determine if there was judicial bias).

First, Perez points to the following exchange that occurred when Mother was being questioned by the State to support his claim of judicial bias:

[THE STATE]: [Biological father] stopped coming for his children after Mr. Perez began living with you?

[MOTHER OF VICTIM]: Only for a certain time because he's a very irresponsible father.

[THE STATE]: Does he pay support for his children?

15

[MOTHER OF VICTIM]: No.

[THE STATE]: Has there ever been any thought that his children might be able to live with him if you were not married to Mr. Perez?

[MOTHER OF VICTIM]: I don't understand.

THE COURT: Me neither.

[THE STATE]: Has it ever been a possibility that Estrella might be able to live with her father?

[TRIAL DEFENSE ATTORNEY]: This calls for speculation.

THE COURT: I think she would be the best person on the planet to know. It's obviously couched from her perspective. The answer must be from her perspective. Overruled. Go ahead.

The trial court's comments concern the ambiguity of the question posed by the prosecutor. The trial court's comments were not about Perez, his alleged crimes, the witness's credibility, and didn't relate to any testimony that she provided about Perez or his conduct. *See Singleton v. State*, 91 S.W.3d 342, 352 (Tex. App.—Texarkana 2002, no pet.) (holding at trial the court did not comment on the weight of the evidence because "[n]one of these remarks was calculated to convey the court's opinion of the case to the jury, and none of them had an effect on the presumption of innocence in the presence of the jury.").

Second, Perez argues that the trial court was "coaching" the State's attorney during a hearing outside the presence of the jury regarding qualifying an outcry

witness. The following exchange occurred between the State and the trial court, after the jury had been excused.

> THE COURT: It's not necessary. The statute requires the Court to make findings in a hearing conducted outside the presence of the jury that the statement is reliable based on the time, content and circumstances of the statement. I'm not able to do that, am I? I don't have all of that information. That's what the statute requires. So, if you're going to use that, I am unable to make a reliability determination. If this is all you have with this witness, that's not enough to allow it.
>
> […]
>
> THE COURT: The issue on this hearing is the reliability of the statement, the reliability of it, not just that I heard the statement; but why is it reliable? That's the main issue in this, folks. I haven't heard much except she heard a statement. Nothing about why that would be a reliable statement.
>
> […]
>
> THE COURT: Well, I haven't heard anything why it's reliable. Just because she says it's – it's like a white horse. Why is it? Because it's a horse that's white. No. Why is it reliable? Not because I relied on it. Why did she rely? Why is it reliable? It's clear here in the – the reliability in this statute is based upon the reliability of the declaration, not the witness. So, that's what the case law says and it's clear that's what has to be met and just a witness saying I relied on it is – what was the basis of the reliance? Why? Why was this declaration of the child one deemed by this witness to be reliable? Answer. That's what has to be answered. Not that it's just – they told me something and it was reliable. I concluded it was reliable. A review, a conclusion needs to be supported by underlying support facts.

The trial court made no other comments during the State's examination to qualify the witness and subsequently found that the witness qualified as an outcry

17

witness under the Texas Code of Criminal Procedure article 38.072. *See* Tex. Code Crim. Proc. Ann. Art. 38.072.

A trial judge should limit his or her comments from the bench and maintain an attitude of impartiality throughout the trial. *Strong*, 138 S.W.3d at 552; *see also* Tex. Code Crim. Proc. Ann. Art. 38.05. However, "[a] judge can lawfully provide guidance and manage the presentation of evidence from the bench without abandoning his role as an independent arbiter." *Strong*, 138 S.W.3d at 552 (citing Tex. R. Evid. 611(a)); *see also Liteky*, 510 U.S. 540 at 556 ("A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.").

We find nothing in the complained of comments to support Perez's argument that the trial court was not acting as neutral arbiter during this exchange. The trial court's comments did no more than convey the trial court's understanding of what the trial court would review when making its decision over reliability and deciding whether to admit the testimony of the outcry witness. We conclude the trial court's statements were within the trial court's purview as the administrator of the courtroom and its proceedings. *See Celis v. State*, 354 S.W.3d 7, 24 (Tex. App.—Corpus Christi-Edinburg 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013) ("[J]udicial rulings almost never constitute a valid basis for a bias or partiality challenge."); *see also Strong*, 138 S.W.3d at 553 (citing Tex. R. Evid. 611(a); Tex.

Code of Crim Proc. Ann. Art. 38.05) ("Under the rules of evidence and criminal procedure, a trial judge can make comments regarding whether or not testimony can be allowed.")).

Finally, Perez argues that the trial court went into "unnecessary details" regarding the indictment to the jury. However, he does not direct our court to what details or statements in the record were unnecessary, nor does he cite to any legal authority to explain why the trial court's statement about the indictment shows bias. An appellant waives an issue on appeal when he does not adequately brief an issue by not providing supporting arguments, substantive analysis, and appropriate citations to authorities and to the record. *See* Tex. R. App. P. 38.1(i); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005). Issue four is overruled.

## Conclusion

Having overruled all of Perez's issues on appeal, we affirm the trial court's judgments.

AFFIRMED.

Jay Wright
Justice

Submitted on May 19, 2023
Opinion Delivered September 13, 2023
Do Not Publish

Before Horton, Johnson and Wright, JJ.

19